UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alliance for Retired Americans,<br>  815 16th Street NW, 4th Floor<br>  Washington, DC 20006,<br><br>American Federation of<br>Government Employees, AFL-CIO,<br>  80 F Street NW,<br>  Washington, D.C. 20001, and<br><br>Service Employees International<br>Union, AFL-CIO,<br>  1800 Massachusetts Ave. NW,<br>  Washington, DC 20036,<br><br>    *Plaintiffs*,<br><br>        v.<br><br>Scott Bessent, in his official<br>capacity as Secretary of the<br>Treasury,<br>  1500 Pennsylvania Ave. NW<br>  Washington, DC 20220,<br><br>Department of the Treasury,<br>  1500 Pennsylvania Ave. NW<br>  Washington, DC 20220, and<br><br>Bureau of the Fiscal Service,<br>  3201 Pennsy Drive, Building E<br>  Landover, MD 20785,<br><br>    *Defendants*. | Civil Action No. 25-313 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     Plaintiffs Alliance for Retired Americans, American Federation of Government Employees, AFL-CIO, and Service Employees International Union, AFL-CIO, file this action against defendants Scott Bessent, in his official capacity as

Secretary of the Treasury, the Department of the Treasury, and the Bureau of the Fiscal Service, agencies of the United States, for declaratory and injunctive relief to halt Defendants' unlawful ongoing, systematic, and continuous disclosure of personal and financial information contained in Defendants' records to Elon Musk and other members of the so-called "Department of Government Efficiency" (DOGE), or to any other person.

2. Millions of individuals engage in financial transactions with the federal government. The government collects trillions of dollars from individuals who pay their income taxes, obtain government services, and pay back loans and other debts that they owe. People also receive money from the federal government. Social security retirement and disability payments, federal tax refunds, veterans' benefits, and salaries and wages for federal workers are some examples of payment transactions that occur between ordinary individuals and federal agencies.

3. The job of effectuating these financial transactions for the federal government belongs to the Department of the Treasury (the Department), operating through the Bureau of the Fiscal Service (the Bureau). To carry out its duties, the Department collects and maintains sensitive personal and financial information about the individuals who are the counterparties to the transaction. Names, Social Security numbers, birth dates, birth places, home addresses and telephone numbers, email addresses, and bank account information about millions of individuals are maintained within the Department's records to enable the secure and timely transfer of funds between federal agencies and members of the public.

4. Federal laws protect sensitive personal and financial information from improper disclosure and misuse, including by barring disclosure to individuals who lack a lawful and legitimate need for it.

5. In his first week as Treasury Secretary, defendant Bessent violated these restrictions. Elon Musk and/or other DOGE members had sought access to the Bureau's records for some time, only to be rebuffed by the employee then in charge of the Bureau. Within a week of being sworn in as Treasury Secretary, Mr. Bessent placed that civil servant on leave and granted DOGE-affiliated individuals full access to the Bureau's data and the computer systems that house them. He did so without making any public announcement, providing any legal justification or explanation for his decision, or undertaking the process required by law for altering the agency's disclosure policies.

6. The scale of the intrusion into individuals' privacy is massive and unprecedented. Millions of people cannot avoid engaging in financial transactions with the federal government and, therefore, cannot avoid having their sensitive personal and financial information maintained in government records. Secretary Bessent's action granting DOGE-affiliated individuals full, continuous, and ongoing access to that information for an unspecified period of time means that retirees, taxpayers, federal employees, companies, and other individuals from all walks of life have no assurance that their information will receive the protection that federal law affords. And because Defendants' actions and decisions are shrouded in secrecy, individuals will not have even basic information about what personal or financial

information that Defendants are sharing with outside parties or how their information is being used.

7. People who must share information with the federal government should not be forced to share information with Elon Musk or his "DOGE." And federal law says they do not have to. The Privacy Act of 1974 generally, and the Internal Revenue Code with respect to taxpayer information, make it unlawful for Secretary Bessent to hand over access to the Bureau's records on individuals to Elon Musk or other members of DOGE. Plaintiffs file this action to put an immediate stop to Defendant's systematic, continuous, and ongoing violation of federal laws that protect the privacy of personal information contained in federal records. This Court's exercise of equitable authority is the only adequate avenue available to Plaintiffs to protect the trust that Plaintiffs' members, and other citizens, taxpayers, and workers, have placed in the federal government in reliance of the laws that Congress enacted to assure the public that what Secretary Bessent is doing would never happen.

## JURISDICTION AND VENUE

8. This Court has statutory jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely, the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 706.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(A) because defendants are officers and agencies of the United States and because at least one defendant resides in Washington, D.C.

## PARTIES

10. Plaintiff Alliance for Retired Americans is a grassroots advocacy organization with 4.4 million members. Founded by the AFL-CIO in 2001, the Alliance now has 39 state alliances and members in every state. The Alliance's retiree activists are from all walks of life. They are former teachers, industrial workers, state and federal government workers, construction workers, and community leaders united in the belief that every American deserves a secure and dignified retirement after a lifetime of hard work.

11. Plaintiff American Federation of Government Employees, AFL-CIO (AFGE) is a labor organization and unincorporated association that represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States. AFGE members include nurses caring for our nation's veterans, border patrol agents securing our borders, correctional officers maintaining safety in federal facilities, scientists conducting critical research, health care workers serving on military bases, civilian employees in the Department of Defense supporting our military personnel and their families, and employees of the Social Security Administration making sure retirees receive the benefits they have earned.

12. Plaintiff Service Employees International Union (SEIU) is a labor union of approximately two million diverse workers who provide public services, healthcare, and property services throughout the United States, Canada, and Puerto Rico. SEIU represents approximately 80,000 federal sector employees in the U.S., including

nurses, doctors, other healthcare workers, police officers, firefighters, correctional officers, office workers, scientists, engineers, analysts, maintenance workers, and more, who are employed by and receive paychecks from the federal government. SEIU also represents approximately 30,000 retiree members, many of whom receive checks from the Social Security Administration.

13. Defendant Scott Bessent is the Secretary of the Treasury.

14. Defendant Department of the Treasury is an agency of the United States, headquartered in Washington, D.C.

15. Defendant Bureau of the Fiscal Service is an agency of the United States headquartered in Landover, Maryland, and a component of the Department.

**FACTS**

**Defendants' Collection and Maintenance of Information on Individuals**

16. Defendants are responsible for managing the finances of the United States Government. Their responsibilities include collecting receipts owed to the government and making payments to recipients of public funds. 31 U.S.C. §§ 3301, 3321. In fiscal year 2024, the Department processed nearly $5 trillion in receipts, including $2.4 trillion from individual income taxes, $1.7 trillion from social security taxes, and $530 billion from corporate income taxes. In that fiscal year, the Department handled $6.752 trillion in outlays, including $1.46 trillion for social security payments and $874 billion in defense spending.[1] The U.S. Treasury is the

---

[1] U.S. Dep't of Treas., Bur. of Fiscal Serv., *Final Monthly Treasury Statement, Receipts and Outlays of the United States Government For Fiscal Year 2024 Through September 30, 2024, and Other Periods* 4.

6

largest collections, payments, cash management, and financial operation in the world.

17.     To engage in financial transactions with individuals, Defendants must collect and maintain personal and financial information about those individuals. As federal agencies, the Department and the Bureau are subject to the requirements of the Privacy Act, 5 U.S.C. § 552a, with respect to records that it maintains on individuals.

18.     Under the Privacy Act, an agency must prepare a notice in the Federal Register "of the existence and character of the system of records" when such a system is established or revised. 5 U.S.C. § 552a(e)(4). This notice is referred to as a System of Records Notice (SORN). At least 30 days before publishing a SORN, an agency must "publish in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency." *Id*. § 552a(e)(11).

19.     The Privacy Act requires a SORN to disclose, among other things, "the categories of individuals on whom records are maintained in the system," "the categories of records maintained in the system," "each routine use of the records contained in the system, including the categories of users and the purpose of such use," and "the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records." 5 U.S.C. § 552a(e)(4).

20. The current SORN for the Bureau was published in the Federal Register on February 27, 2020. 85 Fed. Reg. 11776. The Federal Register publication describes 20 systems of records for the Bureau.

21. SORN .002 concerns payment records, which are records "collected from federal government entities that are requesting disbursement of domestic and international payments to their recipients and is used to facilitate such payments." 85 Fed. Reg. at 11779. Personal information contained in these records include "a payee's name, Social Security number, employer identification number, or other agency identification or account number; date and location of birth, physical and/or electronic mailing address; telephone numbers; [and] payment amount," as well as "financial institution information, including the routing number of his or her financial institution and the payee's account number at the financial institution." SORN .002 states that "[o]nly employees whose official duties require access are allowed to view, administer, and control these records."

22. SORN .012 concerns records about individuals who owe a debt to the government. 85 Fed. Reg. at 11793. Personal information contained in these records include debtor names; taxpayer identifying numbers (*i.e.,* Social Security number or employer identification number); contact information, such as work and home addresses, email addresses, and work, home and cellular numbers; "information concerning the financial status of the debtor and his/her household, including income, assets, liabilities or other financial burdens, and any other resources from which the debt may be recovered"; and the name of employer or employer contact information.

*Id.* at 11794. SORN .012 states that "[o]nly employees whose official duties require access are allowed to view, administer, and control these records." *Id.* at 11796.

23. SORN .013 concerns records "about individuals who electronically authorize payments to the Federal Government." 85 Fed. Reg. at 11796. Personal information contained in these records include names; taxpayer identifying numbers (*i.e.,* Social Security numbers or employer identification numbers); contact information, such as work and home addresses, email addresses, and work, home, and cellular telephone numbers; the name and contact information of employers; dates of birth; driver's license numbers; bank account information; credit and debit card numbers; individual payment information; and user names and passwords. *Id.* at 11796–97. SORN .013 states that "[o]nly employees whose official duties require access are allowed to view, administer, and control these records." *Id.* at 11798.

24. The Privacy Act prohibits the disclosure of a record about an individual to any person or another agency unless "the individual to whom the record pertains" consents or a statutory exception applies. 5 U.S.C. § 552a(b).

25. One exception to the Privacy Act prohibition on disclosure allows disclosure to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." *Id.* § 552a(b)(1).

26. Another exception permits disclosure for a "routine use" if the agency describes the routine use in a SORN. *Id.* § 552a(b)(3). The Bureau's SORN, including SORN .002, .012, and .013 specify the routine uses for which records on individuals may be disclosed.

27. Because Defendants process tax-related transactions, they are also subject to the confidentiality requirements of the Internal Revenue Code, 26 U.S.C. § 6103. Section 6103 provides that "[r]eturns and return information shall be confidential," and cannot be disclosed by a federal officer and employee unless authorized by statute. Return and return information include the taxpayer's identity, mailing address, taxpayer identification number, claims for refund, and other information on tax returns. *Id*. § 6103(b)(1), (2), (6). The officers and employees of the Treasury Department may access return and return information if their "official duties require such inspection or disclosure for tax administration purposes." *Id*. § 6103(h)(1).

**Defendants' Disclosure of Bureau Records on Individuals to DOGE**

28. President Trump was inaugurated as President on January 20, 2025. The same day, he issued an executive order establishing a so-called "Department of Government Efficiency." Under the executive order, the United States Digital Service was renamed the United States DOGE Service (USDS) and a "temporary organization" was established under 5 U.S.C. § 3161 entitled "the U.S. DOGE Service Temporary Organizaton."

29. The executive order directs the USDS Administrator to "work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." It also directs agency heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure

USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." The executive order "displaces all prior executive orders and regulations, insofar as they are subject to direct presidential amendment, that might serve as a barrier to providing USDS access to agency records and systems as described above."

30. Since his inauguration, President Trump has not formally identified the individual who would serve as USDS Administrator or the full list of individuals that are part of the U.S. DOGE Service Temporary Organization.

31. During the presidential campaign, President Trump announced that billionaire entrepreneur Elon Musk would have a leadership role in DOGE. It is widely reported that, since the inauguration, Mr. Musk has played a leadership role in DOGE activities across the federal government.

32. The Trump administration has not publicly revealed whether Mr. Musk has been made an officer or employee of the U.S. government or remains a private citizen. The Trump administration also has not publicly revealed the employment status of other individuals who are part of DOGE.

33. Sometime after November 5, 2024, DOGE representatives reportedly approached officials in the Department seeking access to the agency's payment systems. DOGE's efforts to obtain access continued after President Trump's inauguration.

34. Initially, DOGE's requests for access to the Treasury's payment systems were reportedly rebuffed by David A. Lebryk, the highest-ranking career official at

11

the agency and the individual who had been in charge of the Bureau. According to press reports, Mr. Lebryk advised DOGE representatives during the transition period that the information contained in the payment systems was proprietary and should not be shared outside of the government.

35. On January 27, 2025, the Senate confirmed Mr. Bessent as President Trump's Treasury Secretary, and he was sworn in the following day. On information and belief, Secretary Bessent and his chief of staff Dan Katz had a meeting with Mr. Lebryk later that week, after which Mr. Lebryk was placed on administrative leave. On Friday, January 31, Mr. Lebryk announced that he was retiring from the Treasury after 35 years in federal service.

36. On information and belief, on Friday evening, January 31, defendant Bessent gave representatives of DOGE full access to the federal payment system.[2] Senator Ron Wyden, Ranking Member of the Senate Committee on Finance, has reported that DOGE's access to Treasury's payment system is complete. He has stated that DOGE has "*full* access to this system. Social Security and Medicare benefits, grants, payments to government contractors…. All of it."[3]

37. Defendants have not released the full list of DOGE-affiliated individuals who have been provided access to the Treasury's payment systems, or whether those individuals are employees of the Bureau, the Department, another agency, or a

---

[2] Andrew Duehren et al., *Elon Musk's Team Now Has Full Access to Treasury's Payments System*, N.Y. Times, Feb. 1, 2025.

[3] @wyden.senate.gov, Bluesky (Feb. 1. 2025, 3:37 pm) https://bsky.app/profile/wyden.senate.gov/post/3lh5ejpwncc23.

private enterprise. Tom Krause, the Chief Executive Officer of Cloud Software Group (according to that company's website, *see* https://www.cloud.com/leadership (Feb. 3, 2025)) is reported to be working at the Treasury Department.[4] And Secretary Bessent has reportedly "signed off on a plan to give access to the payment system to a team led by" Mr. Krause, who is identified in the article as "a liaison to Musk's DOGE group that operates out of" the USDS.[5] Defendants have not publicly disclosed the members of Mr. Krause's team or provided the details of the "plan" for access that Secretary Bessent reportedly signed off on. Although an anonymous source assured that "no one outside Treasury would have access" to the payment system, the source apparently did not indicate whether information contained in the payment system would be disseminated outside of the Bureau.

38. Mr. Musk has suggested that the DOGE team has the authority to control disbursements at the Bureau. In response to an allegation by General Mike Flynn (ret.) that certain federal grants to Lutheran Family Services and affiliated organizations should end, Mr. Musk responded on X (formerly Twitter) that "The @DOGE team is rapidly shutting down these illegal payments."[6]

---

[4] Andrew Duehren et al., *Treasury Official Quits After Resisting Musk's Requests on Payments*, N.Y. Times, Jan. 31, 2025.

[5] Michael Stratford et al., *Trump administration gives Musk allies access to Treasury payment system*, Politico, Feb. 1, 2025.

[6] @elonmusk, X (Feb. 2, 2025 3:14 am) https://x.com/elonmusk/status/1885964969335808217.

13

**Defendants' Unlawful Actions Harm Plaintiffs' Members**

39. Plaintiffs' members are among the millions of people who send or receive money to the federal government using the Bureau's payment, collections, and electronic funds systems.

40. Plaintiff Alliance for Retired Americans has members who receive monthly Social Security retirement payments from the Treasury Department. It also has members who receive other forms of retirement and health-related benefits, such as Railroad Retirement Benefits, pension income for federal government service, disability and workers compensation benefits under the Federal Employees' Compensation Program, federal black lung benefits and veterans benefits. Plaintiffs AFGE and SEIU each have members who are federal employees and who work in a wide variety of positions, in every state and the District of Columbia. Their members who are actively working must engage in transactions with Defendants to receive their salaries and wages from their federal employment, while their retired members must do so to receive their pension benefits.

41. Each Plaintiff also has members who pay federal income taxes or receive refunds and who have done so and will do so again in the current tax season.

42. The Bureau will collect and maintain personal and financial information about Plaintiffs' members to make the income payments and benefits they are owed and to process their tax payments or refunds.

43. Defendants have the statutory responsibility to protect the sensitive personal and financial information that they collect and maintain about individuals

from unnecessary and unlawful disclosure to third parties. Defendants have acted inconsistently with that responsibility by granting individuals associated with DOGE access to the extensive records that the Bureau maintains on every individual with whom it engages in financial transactions. Moreover, Defendants have taken this action without obtaining or even asking for the consent of affected individuals.

44. Plaintiffs' members rely on Defendants' payment, collection, and other systems to make and receive payments from the government. They do not have the option of avoiding dealing with Defendants to avoid improper disclosure or misuse of their personal and financial information. Defendants' actions have thus harmed Plaintiffs' members by depriving them of privacy protections guaranteed to them by federal law and, consequently, the ability to decide for themselves whether Elon Musk or other individuals should be able to obtain and use their personal data to advance DOGE's agenda.

## COUNT I
### (Contrary to law)

45. The APA directs courts to hold unlawful and set aside agency actions that are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

46. The Privacy Act prohibits Defendants from disclosing records on individuals to Mr. Musk, other individuals associated with DOGE, or any other person without the individual's consent except in specified circumstances.

47. The Internal Revenue Code, 26 U.S.C. § 6013, prohibits Defendants from disclosing return and return information about taxpayers to Mr. Musk, other

individuals associated with DOGE, or any other person except for officers or employees of the Treasury Department whose official duties require such inspection or disclosure for tax administration purposes.

48. Defendants have implemented a continuous and ongoing system for disclosing records on Plaintiffs' members without obtaining consent from each member.

49. Defendants have implemented a system for disclosing records on Plaintiffs' members to individuals who are not officers or employees of the Bureau who have a need for the records in the performance of their duties.

50. Defendants have implemented a system for disclosing records on Plaintiffs' members to individuals for purposes other than the routine uses specified in the Bureau's SORNs.

51. Defendants have implemented a system for disclosing tax returns and return information of Plaintiffs' members to individuals who are not officers and employees involved in tax administration as part of their official duties.

52. Defendants' actions violate the prohibitions in the Privacy Act and Section 6103 of the Internal Revenue Code and are thus contrary to law.

53. Defendants' action is "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An individual action against the agency for damages under the Privacy Act or the Internal Revenue Code would not put a stop to the ongoing unlawful access that Defendants have granted to the personal and

financial information of Plaintiffs' members. Defendants' action therefore is "subject to judicial review." *Id.* § 702.

## COUNT II
### (Arbitrary and capricious)

54. The APA directs courts to hold unlawful and set aside agency actions that are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

55. Agency action is arbitrary and capricious when an agency fails to engage in reasoned decisionmaking when it adopts or alters its policies.

56. Defendants failed to engage in reasoned decisionmaking when they implemented a system under which Elon Musk or other individuals associated with DOGE could access the Bureau's records for purposes other than those authorized by the Privacy Act, the Bureau's SORNs, and the Internal Revenue Code. In particular, Defendants failed to consider their legal obligations under federal law, the harm that their actions would cause to the objectives that those statutes sought to achieve, or the harm caused to Plaintiffs' members or the general public.

57. Defendant's action is final agency action for which there is no other adequate remedy in a court and therefore is subject to judicial review. *Id.* § 704; *see id.* § 702.

## COUNT III
### (Excess of statutory authority)

58. Defendants have a non-discretionary duty to protect records on individuals, and the returns and return information of taxpayers, from unauthorized disclosure.

59. Defendants' ongoing, systematic, and continuous action in permitting Elon Musk and/or other individuals associated with DOGE to access the Bureau's records and the personal and financial information contained therein violates that duty and is in excess of their statutory authority. *Id.* § 706(2)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

a. Declare that Defendants' decision to implement a system by which Elon Musk or other DOGE-affiliated individuals may access the Bureau's records and obtain personal information about individuals and taxpayers contained there is unlawful.

b. Enjoin Defendants from continuing to permit such access or obtain such personal information.

c. Enjoin Defendants to ensure that future disclosure of individual records will occur only in accordance with the Privacy Act, the Internal Revenue Code, and the SORNs applicable to the system of records at issue.

d. Grant any temporary, preliminary, or permanent injunctive relief necessary to protect the privacy of individuals whose information is contained within the system of records.

e. Award Plaintiffs their costs and attorneys' fees for this action; and

f. Grant any other relief as this Court deems appropriate.

Dated: February 3, 2025                    Respectfully submitted,

/s/ Nandan M. Joshi
Nandan M. Joshi (DC Bar No. 456750)
Nicolas Sansone (DC Bar No. 1686810)
Allison M. Zieve (DC Bar No. 424786)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Norman L. Eisen (DC Bar No. 435051)
State Democracy Defenders Fund
600 Pennsylvania Avenue SE
#15180
Washington, DC 20003