# Exhibit 1

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF THE TREASURY, *et al.*, <br><br> *Defendants*. | Case No. 25 Civ. 01144 (JAV) |

I, Thomas H. Krause, Jr., declare under penalty of perjury:

1. I am employed as the Senior Advisor for Technology and Modernization at the Department of Treasury. I was appointed under 5 U.S.C. § 3109 as a Consultant for Treasury (Departmental Offices, Office of the Chief of Staff). I started serving in this role on January 23, 2025. My role is currently unpaid, and I am not seeking compensation as permissible by law. I am also designated as a Special Government Employee (SGE). While in this Treasury role, I have also maintained my employment as Chief Executive Officer (CEO) of Cloud Software Group, Inc., which a privately held company comprised of several enterprise software businesses. This arrangement has been approved by Treasury's ethics office, who determined, based on my role as an SGE, that this arrangement was permissible. In addition to serving as Senior Advisor for Technology and Modernization, on February 5, 2025, the Treasury Secretary delegated the performance of duties of the Fiscal Assistant Secretary to me, though I have not yet assumed those duties.

2. The Fiscal Assistant Secretary is the official primarily responsible for overseeing the activities of the Bureau of the Fiscal Service (BFS), which manages the government's

accounting, central payment systems, and public debt, among other tasks and which serves as the central payment clearinghouse for the vast majority of payments to and from federal agencies. I am familiar with the Bureau of the Fiscal Service's (BFS) payment systems at issue in this case. The information in this declaration includes information within my personal knowledge as well as information furnished to me in the course of my official duties.

3. The purpose of this declaration is to provide factual information in support of Defendants' Emergency Motion to Dissolve, Clarify, or Modify the Ex Parte Restraining Order. In particular, I wish to highlight certain issues with the Temporary Restraining Order (TRO) issued in this matter on February 8, 2025, that could have major impacts on Treasury's ability to keep the BFS payments systems operational, including in emergency situations, and harm the ability of Treasury's high-level political appointees to oversee the work of BFS.

4. I understand that the TRO restrains Treasury from "granting access to payment records, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees," except to "to civil servants with a need for access to perform their job duties within the Bureau of Fiscal Services who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations." I further understand that the TRO restrains Treasury "from granting access to all political appointees, special government employees, and government employees detailed from an agency outside the Treasury Department, to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential

financial information of payees." Moreover, I understand that the order directs any such person prohibited by the order "who has had such access . . . since January 20, 2025, to immediately destroy any and all copies of material downloaded from the Treasury Department's records and systems." Treasury is working diligently to assure its full compliance with the Order.

5. Treasury has complied with the TRO's restrictions on granting access by Treasury political appointees, Treasury SGEs, and government employees detailed from an agency outside the Treasury Department to payment records, payment systems, and personally identifiable information and/or confidential financial information of payees. As detailed below, no political appointees, SGEs, or detailees at Treasury currently have such access. I am the sole such person that had any level of access to payment records or systems at the time the TRO was issued, and I have not viewed or accessed data restricted by the TRO since it was issued and understand I am restricted from doing so during the pendency of the TRO.

6. The payment systems operated by BFS are responsible for processing the majority of payments coming from the Federal Government, nearly $5 trillion per year. Several of BFS's payment systems are designated as High Value Assets (HVAs) because the security and continued operation of these systems is crucial to the smooth functioning of the global economy. As part of the regular maintenance of the BFS payment systems and other data systems, the Treasury Department often employs contractors to perform both routine and emergency maintenance and provide operational support for these payment systems. These contractors are not civil servants. Without these contractors providing regular maintenance, as well as the ability to call up such contractors at a moment's notice to conduct critical

repairs, the safety and security of BFS's payment systems would be in jeopardy. Treasury's ability to conduct regular maintenance and emergency repairs using contractors is critical.

7. In addition, BFS relies on its employees and contractors, and those of the Federal Reserve Bank of Kansas City (Federal Reserve), which is responsible for hosting and maintaining several of the BFS payment systems. Although the work on BFS payment systems that is conducted by Federal Reserve employees and contractors is governed by a letter of designation between Treasury and the Federal Reserve, these Federal Reserve employees and contractors do not have job duties within the BFS and are not subject to Treasury Department regulations with respect to background checks, security clearances, information security training. Nor does the Treasury Department have ready access to information about the appointment authority under which Federal Reserve employees were hired, nor their ethics designation, such as whether they are Special Government Employees.

8. Employees at payor agencies and certain payees who are recipients of federal funds—including the States who are plaintiffs in this lawsuit—also have access to many of these systems and their data through secure portals in order to submit or receive payments. For example, BFS's Automated Standard Application for Payment (ASAP) system provides access to certain payees to request certain federal funds. These recipients are not federal civil servants and/or are not employees of the Treasury Department. With respect to payor agencies, these payor agencies' employees are not subject to Treasury Department regulations with respect to background checks, security clearances, or information security training. Nor does the Treasury Department have ready access to information about the appointment authority under which payor agencies' employees were hired, nor their ethics designation, such as whether they are Special Government Employees. Without such access

to payment systems by payor agencies and certain payees, the Federal Government's ability to continue making payments—and certain payees' ability to receive them—would effectively cease.

9. As previously noted, I am the sole SGE who had access to view payment data and systems at the time the TRO was issued, and I no longer have such access. My access prior to and at the time of the issuance of the TRO was limited to what is referred to as "over the shoulder" access to view BFS payment data, payment systems, and copied source code that was being accessed by other Treasury employees with appropriate access to the data or systems. I do not have, nor have I ever had, direct or personal access to BFS payment data, code, or systems and I currently do not have "over the shoulder" access.

10. Nonetheless, it is important that high-level political appointees, such as the Treasury Secretary, Deputy Secretary, Chief of Staff, and Under Secretaries, retain the ability to attend briefings concerning information obtained from the data or systems from Treasury employees with appropriate access to the data or systems in order to perform their job duties. Although these high-level officials do not ordinarily need to receive access to or review data from such systems, an event could conceivably occur related to BFS's payment processing role that would require the attention of policy-making officials within Treasury, who could then be hamstrung from carrying out their responsibilities to direct the work of the Department without the ability to assess or receive all potentially relevant data and information without first seeking a modification of the TRO. Prohibiting all political appointees from such access—even including the aforementioned high level Treasury officials, as the TRO appears to do—could therefore interfere with these officials' ability to conduct their duties as they pertain to emergent issues related to Treasury's payment systems.

11. Since January 20, 2025, one other Treasury non-career employee—Marko Elez—had access to BFS payment systems and payment data covered by the order. Mr. Elez resigned on February 6, 2025, and returned all Treasury and BFS equipment and credentials the same day. Treasury staff have quarantined and disabled access to all devices and accounts used by this individual, which can now only be accessed by civil servants with a need for access to perform their job duties within the BFS who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations. Further, based on technical controls in place, BFS oversight of Mr. Elez's work, instructions provided to Mr. Elez regarding proper data handling, and subsequent technical review of his activities, I currently have no reason to believe Mr. Elez retains access to any BFS payment data, source code, or systems. I am concerned that deleting the contents of these accounts and devices would violate Treasury's document preservation duties in connection with related litigation entitled *Alliance for Retired Americans, et al. v. Bessent, et al.*, Civil Action No. 25-0313 (CKK) (D.D.C.).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____        Signed:_____

                                      Thomas H. Krause, Jr.
                                      Senior Advisor for Technology and Modernization
                                      Delegated the Duties of Fiscal Assistant Secretary
                                      United States Department of the Treasury

11. Since January 20, 2025, one other Treasury non-career employee—Marko Elez—had access to BFS payment systems and payment data covered by the order. Mr. Elez resigned on February 6, 2025, and returned all Treasury and BFS equipment and credentials the same day. Treasury staff have quarantined and disabled access to all devices and accounts used by this individual, which can now only be accessed by civil servants with a need for access to perform their job duties within the BFS who have passed all background checks and security clearances and taken all information security training called for in federal statutes and Treasury Department regulations. Further, based on technical controls in place, BFS oversight of Mr. Elez's work, instructions provided to Mr. Elez regarding proper data handling, and subsequent technical review of his activities, I currently have no reason to believe Mr. Elez retains access to any BFS payment data, source code, or systems. I am concerned that deleting the contents of these accounts and devices would violate Treasury's document preservation duties in connection with related litigation entitled *Alliance for Retired Americans, et al. v. Bessent, et al.*, Civil Action No. 25-0313 (CKK) (D.D.C.).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 2/9/25      Signed: _____

Thomas H. Krause, Jr.
Senior Advisor for Technology and Modernization
Delegated the Duties of Fiscal Assistant Secretary
United States Department of the Treasury