# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALLIANCE FOR RETIRED AMERICANS, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>SCOTT BESSENT, in his official capacity as Secretary of the Treasury, *et al.*,<br><br>    Defendants. | 1:25-cv-00313-CKK |

# BRIEF OF *AMICI CURIAE* FORMER TREASURY DEPARTMENT OFFICIALS IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# <u>TABLE OF CONTENTS</u>

INTEREST OF AMICI CURIAE ............................................................................1

SUMMARY OF THE ARGUMENT ......................................................................2

ARGUMENT ..........................................................................................................6

I.  BFS IS RESPONSIBLE FOR DISBURSING THE FEDERAL GOVERNMENT'S PAYMENTS AND MAINTAINING HIGHLY SENSITIVE INFORMATION ........................................................................6

    A.  BFS's disbursement role.......................................................................6

    B.  Personnel with access to BFS systems ...............................................10

II.  DOGE ACCESS TO BFS SYSTEMS POSES SERIOUS RISKS TO THE INTEGRITY OF FEDERAL PAYMENT SYSTEMS ........................11

    A.  DOGE access would provide a centralized avenue for the illegal withholding of payments or benefits to a wide range of recipients. ...........................................................................................11

    B.  DOGE access puts sensitive data—including taxpayer information, Social Security Numbers, and bank account information—in the hands of individuals who shouldn't have access to it. ..........................................................................................14

    C.  DOGE access creates operational security risks that could leave the system and sensitive information vulnerable to exploitation by external actors..................................................................................15

    D.  Even absent a cybersecurity event, providing DOGE with access to these sensitive systems creates the risk of "breaking" the system in ways that could inadvertently delay or stop payments like Social Security from arriving on time. .......................18

III.  PROVIDING DOGE INDIVIDUALS WITH "READ-ONLY ACCESS" DOES NOT REMOVE THESE RISKS......................................18

CONCLUSION ...................................................................................................211

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*New York, et al. v. Trump et al.*,
  No. 25-cv-1144 (S.D.N.Y. Feb. 9, 2025), ECF. No. 13 ............................*passim*

*New York v. Trump*,
  No. 25-cv-39 (JJM) (D.R.I. Feb. 10, 2025), ECF No. 96 ..................................12

*State v. Bowsher*,
  734 F. Supp. 525 (D.D.C. 1990) ..........................................................8

**Statutes**

31 U.S.C. § 3325(a)(1) ......................................................................8

31 U.S.C. § 3325(a)(3) ......................................................................8

31 U.S.C. § 3528 ..........................................................................7, 8

31 U.S.C. § 3716(c)(1)(A) ...................................................................9

**Other Authorities**

Andrew Duehren et al.*, Treasury Official Quits After Resisting Musk's
  Requests on Payments*, N.Y. Times, Jan. 31, 2025 ........................................2, 3

Andrew Duehren et al., *Treasury Sought to Freeze Foreign Aid
  Payments, Emails Show*, N.Y. Times, Feb. 6, 2025 .............................................3

Anna Wide Mathews and Liz Essley White, *DOGE Aides Search
  Medicare Agency Payment Systems for Fraud*, Wall St. J., Feb. 5,
  2025 ....................................................................................5

BFS, "Congressional Budget Justification and Annual Performance
  Plan and Report FY 2025" ................................................................16

BFS, *Do Not Pay* ...........................................................................7

BFS, *Fiscal Service Overview: Data through FY 2023,* ....................................6, 18

ii

BFS, *Secure Payment Systems* ...................................................................... 7

Collin Binkley and Bianca Vazquez Toness, *Musk team's access to
    student loan systems raises alarms over personal information for
    millions*, Associated Press, Feb. 7, 2025 ............................................... 5

Department of the Treasury, "Donald V. Hammond Appointed Fiscal
    Assistant Secretary," September 28, 1998 .......................................... 10

Emma Brown, *Kenneth E. Carfine Treasury Official*, Wash. Post,
    May 23, 2010 ........................................................................................ 10

Exec. Order No. 14,028,
    86 Fed. Reg. 26633 (May 12, 2021) ..................................................... 16

Exec. Order No. 14,169,
    90 Fed. Reg. 8619 (Jan. 20, 2025) ....................................................... 11

Exec. Order. No. 14,154,
    90 Fed. Reg. 8353 (Jan. 20, 2025) ....................................................... 11

Jacob Leibenluft, *"DOGE" Access to Treasury Payment Systems
    Raises Serious Risks*, Center on Budget & Policy Priorities (Feb.
    11, 2025) .................................................................................................. 1

Jake Bleiberg, Viktoria Dendrinou, and Gregory Korte, *US Treasury
    Brings In Two Members From Musk's DOGE Team*, Bloomberg,
    Feb. 4, 2025 ............................................................................................. 3

James Goldgeier and Elizabeth Saunders, *Does DOGE Pose a
    National Security Risk?* Foreign Affairs, Feb. 7, 2025 ...................... 16

Jason Miller, *Treasury's Gregg to retire after 41 years in federal
    financial management*, Federal News Network, May 29, 2014 .......... 10

Letter from Senator Adam B. Schiff to Susan Wiles, White House
    Chief of Staff, February 10, 2025 ........................................................ 15

Matthew J. Vaeth, "Memorandum for Heads of Executive
    Departments and Agencies," January 27, 2025 ................................... 12

OMB M-22-09 "Moving the Government Toward Zero Trust
    Cybersecurity Principles," January 26, 2022 ...................................... 16

Robert Rubin et al., *Five Former Treasury Secretaries: Our Democracy Is Under Siege*, N.Y. Times, Feb. 10, 2025 ................................4, 32

## <u>INTEREST OF AMICI CURIAE</u>[1]

*Amici curiae* respectfully submit this brief in support of Plaintiffs' motion for a preliminary injunction. *Amici* are former United States Treasury officials with substantial experience and knowledge concerning the Bureau of Fiscal Services ("BFS") payment systems at issue in this action. *Amici* have been following with great interest and concern recent public reports about efforts by the "Department of Government Efficiency" ("DOGE") to gain access to BFS payment systems. *Amici* believe that their informed perspectives, as set forth in this brief, will assist the Court in assessing Plaintiffs' instant motion.

*Amici* consist of the following former Treasury officials:

- Jacob Leibenluft, former Counselor to United States Treasury Secretary Janet Yellen.[2]

- Natasha Sarin, former Counselor to the Secretary, Tax Policy and Implementations

- Don Hammond, former Fiscal Assistant Secretary

- Dick Gregg, former Assistant Secretary and FMS Commissioner

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than *amici* curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

[2] This brief is adapted from an essay prepared by Mr. Leibenluft. *See* Jacob Leibenluft, *"DOGE" Access to Treasury Payment Systems Raises Serious Risks*, Center on Budget & Policy Priorities (Feb. 11, 2025), https://www.cbpp.org/research/federal-budget/doge-access-to-treasury-payment-systems-raises-serious-risks#.

1

- Josh Frost, former Assistant Secretary for Financial Markets

- Anna Canfield Roth, former Assistant Secretary for Management

- Aditi Hardikar, former Assistant Secretary for Management

- Danny Werfel, former OMB Controller

- Graham Steele, former Assistant Secretary for Financial Institutions

- Amias Gerety, former Acting Assistant Secretary for Financial Institutions

- Antonio Weiss, former Counselor to the Treasury Secretary

## SUMMARY OF THE ARGUMENT

On January 31, reports began emerging from the Treasury Department that senior civil servants were resisting requests from the "Department of Government Efficiency" ("DOGE") concerning access to the payment systems the Bureau of the Fiscal Service ("BFS") operates.[3]   As the *New York Times* would later report, "Trump administration appointees and allies of Elon Musk," had requested that career officials use the BFS payment systems to freeze federal payments, prior to

---

[3] Andrew Duehren *et al., Treasury Official Quits After Resisting Musk's Requests on Payments*, N.Y. Times, Jan. 31, 2025, https://www.nytimes.com/2025/01/31/us/politics/david-lebryk-treasury-resigns-musk.html.

political appointees gaining access.[4]   Musk—who is reportedly "fixated on the Treasury system as a key to cutting federal spending"[5]—tweeted about DOGE's intention to stop certain payments, declaring that civil servants at BFS are criminally enabling fraudulent payments.[6]

Shortly thereafter, officials affiliated with DOGE were granted certain access to BFS systems, although press reports have varied on the exact nature of this access.[7]   For the first time in decades, the Secretary of the Treasury has delegated the responsibilities of overseeing these payment systems to a political official rather than a non-partisan career civil servant with long expertise and experience in these

---

[4] Andrew Duehren, Alan Rappeport, and Theodore Schleifer, Treasury Sought to Freeze Foreign Aid Payments, Emails Show, N.Y. Times, Feb. 6, 2025, https://www.nytimes.com/2025/02/06/us/politics/trump-musk-usaid.html.

[5] Duehren *et al.,* "Treasury Official Quits After Resisting Musk's Requests on Payments," *supra.*

[6] "Career Treasury officials are breaking the law every hour of every day by approving payments that are fraudulent or do not match the funding laws passed by Congress. This needs to stop NOW!" @elonmusk, X.com (Feb. 2, 2025, 2:27 PM), https://x.com/elonmusk/status/1886134485822922785.

[7] Jake Bleiberg, Viktoria Dendrinou, and Gregory Korte, *US Treasury Brings In Two Members From Musk's DOGE Team*, Bloomberg, Feb. 4, 2025, https://www.bloomberg.com/news/articles/2025-02-04/us-treasury-brings-in-two-members-from-musk-s-doge-team.

matters, even while that political official maintains his role as a private company CEO.[8]

DOGE access to or control over BFS systems raises serious concerns, including the risk that payments will be illegally stopped based on Musk's or the Trump Administration's own political or policy preferences, the possibility of severe cybersecurity and privacy breaches, and the potential that payments could be inadvertently delayed to millions of individuals, including retirees and veterans; to organizations and businesses providing public services on behalf of the federal government; and to states, localities, territories, and tribal nations providing services like Medicaid and transportation. *Amici*'s concerns are widely shared by those with knowledge of BFS's systems. Five former Treasury Secretaries, in an article entitled "Our Democracy Is Under Siege," emphasized the fundamental problem of allowing political actors to exercise unfettered control over government payments. They warned that "it is not for the Treasury Department or the administration to decide which of our congressionally approved commitments to fulfill and which to cast aside."[9]

---

[8] *See* Affirmation of Thomas H. Krause, *New York, et al. v. Trump et al.*, No. 25-cv-1144 (S.D.N.Y. Feb. 9, 2025), ECF. No. 13.

[9] *See* Robert Rubin *et al.*, *Five Former Treasury Secretaries: Our Democracy Is Under Siege*, N.Y. Times, Feb. 10, 2025, https://www.nytimes.com/2025/02/10/opinion/treasure-secretaries-doge-musk.html.

This *amicus* brief explains what BFS does, how it has traditionally been managed by career civil servants, and the risks posed by tampering with the system. While this brief is focused on the Treasury payment systems, DOGE personnel are also seeking and gaining access to other sensitive government systems, including the federal student aid system, which has confidential information about student borrowers (some of whom are long out of school).[10]  There have been similar reports of DOGE personnel accessing health agency payment and contracting systems as well as systems for major programs like Medicaid and Medicare.[11]  Many of the same concerns raised by access to the Treasury systems hold for those systems as well.

---

[10] Collin Binkley and Bianca Vazquez Toness, *Musk team's access to student loan systems raises alarms over personal information for millions*, Associated Press, Feb. 7, 2025, https://apnews.com/article/education-department-trump-doge-8c5bba3883b3d924b28114a4f291bec4.

[11] Anna Wide Mathews and Liz Essley White, *DOGE Aides Search Medicare Agency Payment Systems for Fraud*, Wall St. J., Feb. 5, 2025, https://www.wsj.com/politics/elon-musk-doge-medicare-medicaid-fraud-e697b162.

## ARGUMENT

### I. BFS IS RESPONSIBLE FOR DISBURSING THE FEDERAL GOVERNMENT'S PAYMENTS AND MAINTAINING HIGHLY SENSITIVE INFORMATION

#### A. BFS's disbursement role

BFS operates the "plumbing" that collects information from government agencies about the people, entities, and governments to which funds should be disbursed and then makes those payments. The vast majority of payments that flow in and out of the federal government go through the Treasury payment systems. BFS manages an average daily cash flow of roughly $205 billion, securely disbursed nearly 1.3 billion payments totaling $5.4 trillion in fiscal year 2023, and centrally disburses nearly 88 percent of all federal payments.[12]

These payments operate through several different systems. For example, the Automated Standard Application for Payments (known as ASAP.gov) makes grant funding available to be securely drawn down by state and local governments, educational and financial institutions, vendors and contractors, for-profit and nonprofit organizations, and tribal organizations. Through ASAP.gov, federal agencies enroll recipient entities, authorize payments to them, and manage their accounts, allowing these entities to request payments from pre-authorized accounts.

---

[12] "*Fiscal Service Overview: Data through FY 2023*," BFS, https://www.fiscal.treasury.gov/about.html (last visited Feb. 11, 2025).

BFS also operates the Payment Automation Manager (or PAM), which is used to make over a billion payments annually, including tax refunds and benefit payments like Social Security.

While these systems differ, they generally operate through the following process:

- A federal agency will develop, certify, and send a "payment file" to BFS through the Secure Payment System (SPS) with instructions on who is to be paid, when, and how much.[13]

- That payment file will typically include the necessary information to complete a payment, including the recipient's banking information, as well as sensitive identifying information like Social Security Numbers.[14]

- Payment files are checked against a series of pre-approved data sets as part of the Do Not Pay program.[15]  These data sets check whether the intended payee is deceased (the "death master file"), delinquent on federal debts, or debarred from receiving payments or doing business with the federal government—such as blocked foreign nationals on the Office of Foreign Assets Control's list.  If issues are flagged, it is the agency that initiated the payment file that must adjudicate them and determine whether a payment is proper.

- BFS processes the payment by sending the money electronically to the designated account or sending a paper check – reflecting the fact that Treasury's role is to disburse the funds, while the certifying agency

---

[13] See 31 U.S.C. § 3528 and *Secure Payment Systems*, BFS, https://fiscal.treasury.gov/sps/ (last visited Feb. 11, 2025).

[14] See the July 11, 2019 "Privacy and Civil Liberties Impact Assessment: Payment Automation Manager," https://www.fiscal.treasury.gov/files/pia/pampclia.pdf, for an example of sensitive information included in these systems.

[15] See *Do Not Pay*, BFS, https://www.fiscal.treasury.gov/DNP/ (last visited Feb. 11, 2025).

establishes who is eligible to be paid and how much. It will do so only after the payment has been properly certified. *See* 31 U.S.C. § 3325(a)(1) (requiring "disbursing official[s]" to "disburse money only as provided by a voucher certified by … the head of the executive agency concerned"). Indeed, other than checking "the correctness of computations on a voucher"—and potentially redirecting some portion of a recipient's payment towards a delinquent federal debt that they owed—disbursing officials at Treasury are "held accountable for" ensuring that any funds certified by the relevant agency are paid out to the payee. 31 U.S.C. § 3325(a)(3).

As this process makes clear, BFS staff do not independently determine a payment's eligibility (a responsibility performed by agencies with respect to the specific laws and regulations governing their programs), but instead ensure that requested payments are successfully and securely processed. As this Court has long explained, "[t]he disbursing officials [at Treasury] do not review the vouchers to determine the legality or propriety of the underlying claims but, rather, the [Treasury's] Regional Financial Centers examine the vouchers to determine if they are in the proper format, have been duly certified and are correctly computed." *State v. Bowsher*, 734 F. Supp. 525, 530 (D.D.C. 1990). BFS career officials thus execute an important but operational role: as noted above, if the payment information BFS receives from an agency is certified in its proper form, then BFS makes the payment. It is the so-called "certifying officer" at an agency—the one who sends over the payment—who "is responsible for . . . the legality of a proposed payment under the appropriation or fund involved," including adjudicating any payment flags that are raised by cross-checks with Do Not Pay databases. 31 U.S.C. § 3528(a). BFS has

8

no authority to directly alter requested payment amounts unless it is to "offset" (*i.e.*, redirect a portion of a payment toward) a known government debt, an authority provided in the Debt Collection Improvement Act of 1996. *See* Public Law 104-134; *see also* 31 U.S.C. § 3716(c)(1)(A).

Access to or control over the BFS systems could have implications for entitlement programs, like Social Security and Medicare, and "discretionary" programs funded annually through the appropriations process, whether implemented via direct federal payments to individuals; through payments to states, territories, or tribal or local governments; or through payments to private nonprofits or businesses. In each of these cases, BFS is responsible for ensuring that funds accurately reach the intended federal recipients. To give three examples:

- In the case of entitlement programs where money goes directly from the federal government to a recipient's bank account, like **Social Security benefits** or **veterans' disability compensation**, BFS processes a payment file that is developed by the Social Security Administration or the Department of Veterans Affairs and then deposits funds into an individual's account or sends them a check.

- In the case of a federal program administered by a state, territory, or tribal nation, program like Medicaid (administered by the Department of Health and Human Services) or WIC (the Department of Agriculture's Special Supplemental Nutrition Program for Women, Infants, and Children), BFS processes a payment file to make funding available to the administering government, which then provides services or benefits to individuals. In some cases, this funding is provided up front; in others, it is provided on a reimbursable basis.

- In the case of Pell Grants, where funds are provided to private (for-profit or nonprofit) universities, BFS processes a payment file from the

Department of Education that enumerates how much the provider was due to be reimbursed or the university was due to cover Pell Grant recipients at the institution.

## B.    Personnel with access to BFS systems

For decades, BFS (and its immediate predecessor, the Financial Management Service) has been staffed by nonpartisan career employees led by a nonpartisan career official, reporting to a career official (the fiscal assistant secretary).[16]  Only a small number of career staff at BFS have served as disbursing officials within the Treasury Department.  BFS maintains strict access controls and separation of duties protocols, and individuals with access to BFS systems are subjected to extensive monitoring and oversight.  Each employee undergoes a thorough security screening and is given extensive training on the proper management and operation of the payment systems and the handling of sensitive data.  This arrangement has protected the integrity of these federal payment systems and processes, ensuring insulation

---

[16] For example, the three fiscal assistant secretaries who served between 2007 and 2025 had decades of civil service experience at Treasury among them.  *See, e.g.*, Jason Miller, *Treasury's Gregg to retire after 41 years in federal financial management*, Federal News Network, May 29, 2014, https://federalnewsnetwork.com/management/2014/05/treasurys-gregg-to-retire-after-41-years-in-federal-financial-management/; Emma Brown, *Kenneth E. Carfine Treasury Official*, Wash. Post, May 23, 2010, https://www.washingtonpost.com/wp-dyn/content/article/2010/05/02/AR2010050203225.html; Department of the Treasury, "Donald V. Hammond Appointed Fiscal Assistant Secretary," September 28, 1998, https://home.treasury.gov/news/press-releases/pr2716.

from political pressures or policy interests and focusing BFS's mission on reliability, accuracy, timeliness, operational efficiency, and privacy protections.

## II.    DOGE ACCESS TO BFS SYSTEMS POSES SERIOUS RISKS TO THE INTEGRITY OF FEDERAL PAYMENT SYSTEMS

The integrity of federal payment systems is critically important to the individuals, businesses, organizations, governments, and financial institutions that trust their information will be protected in the system and that legally owed payments will be reliably received without any threat of interference.   Breaking the longstanding precedent that non-career officials will not access or interfere with BFS payment systems creates at least four major risks.

### A.    DOGE access would provide a centralized avenue for the illegal withholding of payments or benefits to a wide range of recipients.

The Trump Administration has already indicated through its first-week executive orders and the Office of Management and Budget's actions(such as the now rescinded OMB memo M-25-13) that it will seek to compel agencies to block payments to legally entitled recipients for political or policy reasons, which may amount to illegal impoundment.[17]   Already, courts have begun to order these actions

---

[17] *See, e.g.*, Executive Orders "Reevaluating and Realigning United States Foreign Aid", Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025), *available at:* (https://www.whitehouse.gov/presidential-actions/2025/01/reevaluating-and-realigning-united-states-foreign-aid/) and "Unleashing American Energy", Exec. Order. No. 14,154, 90 Fed. Reg. 8353 (Jan. 20, 2025), *available at:* https://www.whitehouse.gov/presidential-actions/2025/01/unleashing-american-

stopped.[18]  Further, Musk has made clear his intention to use BFS payments to cut

federal spending, including his charge to DOGE staff to maximize the amount of

daily spending cuts.[19]

Access to or control of the BFS payment systems would potentially allow

empowered political officials to bypass the guardrails of career civil servant

stewardship in federal agencies and at BFS and centralize efforts to illegally block

payments—either in conjunction with, or apart from, any steps agencies would take.

For example, individuals with access to the BFS payment system could potentially

(and illegally):

- Block, or threaten to block, payment to a Social Security recipient.

- Block, or threaten to block, specific program payments or federal payments
  *en masse* to a recipient state or local government based on a dispute over a
  policy issue (*e.g.*, if a state is accused of not fully cooperating with the Trump

---

energy/; *see also* Matthew J. Vaeth, "Memorandum for Heads of Executive
Departments       and       Agencies,"       January       27,       2025,
https://s3.documentcloud.org/documents/25506186/m-25-13-temporary-pause-to-
review-agency-grant-loan-and-other-financial-assistance-programs.pdf.

[18]  ECF No. 13, Order, dated February 6, 2025; Order, *New York v. Trump,* No. 25-
cv-1144 (JAV) (S.D.N.Y.  Feb. 8, 2025), ECF No. 6; *New York v. Trump,*  No. 25-
cv-39 (JJM) (D.R.I. Feb. 10, 2025), ECF No. 96.

[19]  "Reducing the federal deficit from $2T to $1T in FY2026 requires cutting an
average of ~$4B/day in projected 2026 spending from now to Sept 30." @elonmusk,
X.com       (Jan.       30,       2025,       11:02       PM),
https://x.com/elonmusk/status/1885176751036252621;  "I am cautiously optimistic
that we will reach the $4B/day FY2026 reduction this weekend." @elonmusk,
X.com       (Feb.       1,       2025,       1:03       AM),
https://x.com/elonmusk/status/188557467873703982.

Administration or acceding to its desires on issues like immigration or LGBTQ rights).

- Block, or threaten to block, payments—potentially across multiple agencies' programs—to specific nonprofits or businesses that the Trump Administration views as non-compliant with their policy preferences, or perhaps are competitors to someone well connected to the Administration.

This is no idle fear. In response to retired Lt. General Michael Flynn posting a list of institutions with "Lutheran" in their name that receive federal funding (both service providers and universities), Elon Musk tweeted on February 2, 2025 that "the DOGE team is rapidly shutting down these illegal payments."[20] This is just one example of how providing DOGE with unfettered access to BFS could allow political officials to impose a payment stop on institutions that are eligible recipients of funding and have been approved by the relevant agency.

Even if the Trump Administration took no action, just the perceived ability to block payments in this manner could coerce individuals or entities into complying with Administration preferences that are not enshrined in law, issuing statements supportive of the Administration, or making other concessions to prevent the disruption of federal funds to which they are entitled. In short, it could become a tool to bully those with whom the President or Elon Musk disagree.

---

[20] @elonmusk, X.com, (Feb. 2, 2025, 3:14 AM), https://x.com/elonmusk/status/1885964969335808217.

## B. DOGE access puts sensitive data—including taxpayer information, Social Security Numbers, and bank account information—in the hands of individuals who shouldn't have access to it.

The payment files that BFS maintains in its systems include highly sensitive information, including recipients' Social Security Numbers (regardless of the kinds of payment they are receiving), addresses, and bank account information.  BFS's systems also contain, among other things:

- direct deposit information and other sensitive identifying information for tens of millions of Social Security recipients;

- bank account information for nonprofit and for-profit providers of government services through Medicare; and

- potentially sensitive personal or business information from private firms that do business as government contractors.

Unauthorized individuals who receive access to BFS's system could gain access to all of the above information, and more.  And the risk that such information could be inappropriately viewed by political appointees who were not thoroughly vetted for access to sensitive information and lack the training needed to protect the data could reduce participation in government programs or reduce competition to provide government services.  Businesses securing government contracts should not have to weigh the risk that their sensitive information will be inappropriately viewed by political appointees who might have close relationships with competitors—or, in the case of special government employees like those at DOGE, still have financial interests in those competitors themselves.

14

This risk is all the more acute given that one of the DOGE-affiliated individuals named by Treasury as having access to the BFS payments systems—Tom Krause—is serving as a temporary "special government employee" while still retaining his role as CEO of a software firm.[21]   Even more troubling, Krause has been given the role of fiscal assistant secretary overseeing BFS, despite that role having been filled by non-partisan career civil servants for decades.[22]   Similarly, Elon Musk has been leading DOGE efforts while seemingly still actively running his several companies (and doing business with the federal government), creating the possibility of extensive conflicts of interest.[23]

### C.    DOGE access creates operational security risks that could leave the system and sensitive information vulnerable to exploitation by external actors.

BFS's payment systems are considered part of the national financial critical infrastructure and are subjected to heightened controls and protections.   For example, they must rigorously adhere to National Institute of Standards and Technology security and safety standards to protect the systems from external threats

---

[21] *See* Affirmation of Thomas H. Krause, *New York, et al. v. Trump et al.*, No. 25-cv-1144 (S.D.N.Y. Feb. 9, 2025), ECF No. 13, ¶ 1.

[22] *Id.*

[23] *See* Letter from Senator Adam B. Schiff to Susan Wiles, White House Chief of Staff, February 10, 2025, https://www.schiff.senate.gov/wp-content/uploads/2025/02/20250210-Sen-Schiff-Letter-to-COS-Wiles-on-Musk.pdf

and cyberattacks.[24]  The payment systems must be rigorously maintained and kept up to date. Any system changes, no matter how small, must be performed by trained and authorized personnel, carefully controlled and monitored, and deployed only after thorough testing. The payment systems are designed to adhere to a "zero trust cybersecurity standard," in which systems access is limited to the minimum needed for any particular function and constant verification and authentication are required to grant such access.[25]

Providing full access to the BFS payment systems to unaccountable or inexperienced actors like DOGE therefore poses significant operational risks for fraud, theft, or espionage.[26]  Such appointees, lacking the vetting and training described above, could accidentally expose a "roadmap" for thieves and fraudsters looking to penetrate the system, or for foreign intelligence services seeking to build

---

[24] BFS, "Congressional Budget Justification and Annual Performance Plan and Report FY 2025," https://home.treasury.gov/system/files/266/14.-BFS-FY-2025-CJ.pdf.

[25] For a definition of "zero trust architecture," see "Executive Order 14028—Improving the Nation's Cybersecurity," Exec. Order No. 14,028, 86 Fed. Reg. 26633 (May 12, 2021), at p. 15, https://www.govinfo.gov/content/pkg/DCPD-202100401/pdf/DCPD-202100401.pdf and OMB M-22-09 "Moving the Government Toward Zero Trust Cybersecurity Principles," January 26, 2022, https://zerotrust.cyber.gov/downloads/M-22-09%20Federal%20Zero%20Trust%20Strategy.pdf.

[26] James Goldgeier and Elizabeth Saunders, *Does DOGE Pose a National Security Risk?* Foreign Affairs, Feb. 7, 2025, https://www.foreignaffairs.com/united-states/elon-musk-does-doge-pose-national-security-risk

out their understanding of who is receiving funds, in what amounts, and for what purposes—risking a cyberattack that would throw the federal government into chaos. The cybersecurity risks could stem from DOGE personnel using unauthorized systems to copy or analyze sensitive data or exposing—even if unintentionally— protected information about how the system works. And DOGE appears to have pushed career civil servants to grant inappropriate access to political appointees who lack experience in these systems and have little oversight or restraint, which could override existing protections in ways that dramatically increase those risks.[27]   These risks are not merely speculative. The Treasury Department is frequently the target of hacks and other malicious cyber activity that are increasing in frequency and intensity. As recently as December 2024, the Treasury Department disclosed a major cybersecurity incident involving Chinese state-sponsored hackers that were able to override a third-party software service provider's security measures to access multiple Treasury workstations.[28]

---

[27] *See* Order, at 2, *New York v. Trump*, No. 25-cv-1144 (S.D.N.Y. Feb. 8, 2025), ECF. No. 6.

[28] "Letter from Aditi Hardikar, U.S. Department of the Treasury to Senator Sherrod Brown and Senator Tim Scott, Dec. 30, 2024, *available at:* https://www.documentcloud.org/documents/25472698-letter-from-treasury-re-december-2024-cyberattack/".

Granting inappropriate access to political actors who may not closely adhere to existing safeguards is an unaffordable risk for cyber attacks and national security.

### D. Even absent a cybersecurity event, providing DOGE with access to these sensitive systems creates the risk of "breaking" the system in ways that could inadvertently delay or stop payments like Social Security from arriving on time.

BFS disburses 1.3 billion payments a year and reports making 100 percent of payments on time.[29]  Any efforts to interfere with the system, even in a limited way, run the risk of creating broader problems that could delay payments or damage the perceived reliability of federal payments.  The system is designed to process payments at volume, and any attempts to target individual recipients at the disbursement stage—as opposed to at the agency level, before the payment file is sent—run the risk of delaying a much larger set of payments like monthly Social Security benefits.  Markets, financial institutions, organizations and states providing services, and individuals all rely on the timely disbursement of government funds, so the payment systems cannot afford even brief unscheduled disruptions.

## III. PROVIDING DOGE INDIVIDUALS WITH "READ-ONLY ACCESS" DOES NOT REMOVE THESE RISKS

Limiting DOGE-affiliated individuals to "read-only access" does not solve these problems.  As described above, many of the risks posed by DOGE access to

---

[29]  "*Fiscal Service Overview: Data Through FY 2023*", BFS, https://www.fiscal.treasury.gov/about.html (last visited Feb. 11, 2025).

BFS's systems exist regardless of whether the officials can just read the data or also can modify it. Read-only access would still threaten individuals' privacy, compromise national security, and provide information that could support a broad and inappropriate use of the improper payments law to initiate illegal impoundment.

In fact, even an individual limited to "read-only" access can still direct personnel with current read-and-write access to stop payments through BFS—and Treasury Secretary Bessent has not committed to ensuring that such direction will not be given. Instead, as described above, contravening decades of non-partisan career civil servants serving as fiscal assistant secretary and overseeing BFS, Secretary Bessent has delegated those responsibilities to political appointee Tom Krause.[30] This followed reporting in the *New York Times* that Krause had advocated for career staff to hold one agency's certified payments even after being informed by the then-fiscal assistant secretary that he did not believe Treasury had the legal authority to stop such payments.[31]

Treasury's payment systems have long been managed by non-political technical experts for a reason—our government relies on trust from all parties, including the general public, that BFS will provide funds, on time and securely, to

---

[30] *See* Affirmation of Thomas H. Krause, *New York, et al. v. Trump et al.*, 25-cv-1144 (S.D.N.Y. Feb. 9, 2025), ECF No. 13.

[31] Duehren, Rappeport, and Schleifer, *supra.*

those who government agencies determine are meant to receive them under the law. This is why five former Treasury secretaries wrote recently that any hint that congressionally authorized payments could be selectively suspended by Treasury comes at a cost to the credibility of the United States and would be "a breach of trust and ultimately, a form of default."[32]   The approach signaled by DOGE leadership risks destroying the public's trust, whether by creating an opportunity for political actors to unilaterally block payments to those who are legally entitled to receive them, compromising the privacy and security of sensitive information for millions of Americans, or inadvertently destabilizing the payment system.

---

[32] Robert Rubin *et al.*, *supra*.

## **CONCLUSION**

For the above reasons, DOGE's access to BFS payment systems poses critical risks to the Federal Government's fiscal integrity.  The Court should grant Plaintiffs' motion for a preliminary injunction.

Date: February 11, 2025

Respectfully submitted,

*Daniel S. Ruzumna*
Daniel S. Ruzumna (D.C. Bar 450050)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
druzumna@pbwt.com

*Counsel for Amici Curiae*

21