# Exhibit 2

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| State of New York, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. Department of the Treasury, *et. al.*<br><br>*Defendants*. | Case No. 1:25-cv-1144-JAV |

I, David Ambrose, declare under penalty of perjury:

1. I currently serve as the Bureau of the Fiscal Service's (BFS or the Bureau) Chief Security Officer/Chief Privacy Officer/Acting Chief Information Security Officer. I report to Nathaniel Reboja (Reboja), Assistant Commissioner for Information and Security Services and Chief Information Officer for the Bureau. I am a career civil servant. I have been employed at the Bureau for over 19 years.

2. In my current role, I am one of the Bureau employees responsible for overseeing the security of the Bureau's technology infrastructure and the information contained therein. As Chief Security Officer, I am involved in protecting the security of, and access to, the Bureau's data, computer and payment systems, and equipment (collectively Systems and Equipment), and understand the security posture of these Systems and Equipment. I have extensive knowledge of the security strategies and measures that support the Bureau's enterprises, and am familiar with Bureau requirements around access to sensitive systems.

**Ryan Wunderly Bureau Access**

3. I was informed that Ryan Wunderly (Wunderly) is an employee of the United States Department of the Treasury.

4. I reviewed the executed declaration of Kari Mencl (Mencl), Chief of Personnel Security in the Office of Security Programs (OSP) in the Office of Intelligence and Analysis (OIA) for the U.S. Department of the Treasury. ECF No. 98-4. Mencl's declaration states that in February 2025, OSP conducted a security clearance vetting for Wunderly, cleared him for onboarding at Treasury, and granted him a Top-Secret clearance. ECF No. 98-4 ¶ 13.

5. I reviewed the executed declaration of Michael J. Wenzler (Wenzler), the Associate Chief Human Capital Officer for Executive and Human Capital Services at the Departmental Offices of the Department of the Treasury. ECF No. 98-3. Wenzler's declaration states that Wunderly received and reviewed the Bureau's Rules of Behavior (Rules). ECF No. 98-3 ¶ 22. The Rules define responsibilities and procedures for the secure use of Bureau data, equipment, payment systems, and facilities. By receiving and reading this document, Bureau System and Equipment users acknowledge their responsibility for complying with the Rules.

6. On March 13, 2025, at the direction of Reboja, I briefed Wunderly, via Microsoft Teams video conferencing, on the Bureau's cybersecurity and Personally Identifiable Information (PII) practices and precautions. Specifically, I briefed Wunderly on the Bureau's (1) policies and rules associated with safeguarding information maintained in the Bureau's Systems and Equipment, including the Bureau's Email and Instant-Messaging Policy and the Rules; (2) policy that data and equipment could not leave his work station and be removed or sent outside the Bureau without formal approval; (3) policy on safeguarding sensitive information

received from outside sources or other agencies; and (4) policy that sensitive information should be stored on the Bureau's network drive(s), not locally on the laptop.

7. Reboja also instructed me that, moving forward, Bureau security personnel should ensure that, prior to granting access to Bureau Systems and Equipment to any member of the Treasury Department of Government Efficiency (DOGE) Team, such Treasury DOGE Team Member must receive the Rules and a briefing similar to the one I gave to Wunderly detailed above.

8. To my knowledge, Wunderly has not, as of the date of this declaration, accessed any BFS Systems and Equipment, and has not been issued any BFS computer equipment.

**Marko Elez Bureau Access**

9. As discussed in the declarations of Joe Gioeli III, Marko Elez (Elez) was a Treasury employee who received access to Bureau Systems and Equipment in late January and early February of 2025. *See generally* ECF No. 34; *see also* ECF No 98-2 ¶ 12.

10. Prior to accessing Bureau Systems and Equipment, I briefed Elez, via Microsoft Teams, on the same topics mentioned in Wunderly's briefing detailed above.

11. After Elez resigned in early February, Bureau security personnel performed a forensic analysis on Elez's email account and issued laptop. The forensic analysis consisted of a review of all emails Elez sent or received from his BFS email account, and all attachments to those emails. The laptop review included forensic disk imaging and memory capture. The forensic analysis revealed that Elez did not make any alterations or changes to Bureau payment systems.

12. The forensic analysis also revealed that Elez sent an email with a spreadsheet containing PII to two United States General Services Administration officials. The PII detailed a name (a

person or an entity), a transaction type, and an amount of money. The names in the spreadsheet are considered low risk PII because the names are not accompanied by more specific identifiers, such as social security numbers or birth dates. Elez's distribution of this spreadsheet was contrary to BFS policies, in that it was not sent encrypted, and he did not obtain prior approval of the transmission via a "Form 7005," describing what will be sent and what safeguards the sender will implement to protect the information. The briefing that I provided to Wunderly specifically addressed these issues. Briefings that will be provided to future DOGE Team Treasury members who have been trained and cleared in order to access the Bureau's Systems and Equipment will also address these issues.

**Marko Elez's Security Clearance**

13. OSP conducts security clearance vetting for Treasury employees; the Bureau does not conduct any additional vetting for non-Bureau Treasury employees seeking access to Bureau Systems and Equipment. In order to access Bureau Systems and Equipment, an individual must complete various stages of the security vetting process, including a background investigation with a favorable adjudication. Treasury employees with an interim Secret clearance can be granted access to Bureau Systems and Equipment while the appropriate background investigation is being completed if there are favorable results from an initial screen of the security vetting paperwork (Standard Form 86), a verification of his U.S. citizenship, and preliminary fingerprint checks for any criminal record.

14. On January 22, 2025, OSP informed me that Elez was granted an interim Secret clearance, which meant that there were favorable results from an initial screen of the security vetting paperwork (Standard Form 86), a verification of his U.S. citizenship, and preliminary

fingerprint checks for any criminal record, and Elez was therefore eligible to access the Bureau's Systems and Equipment.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 3/14/25

Signed:

David J. Ambrose
Chief Security Officer/Chief Privacy Officer/Acting Chief Information Security Officer
Bureau of the Fiscal Service
United States Department of the Treasury