# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE FOR RETIRED AMERICANS, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>SCOTT BESSENT, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 1:25-cv-00313-CKK |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, and to the Local Rules of the United States District Court for the District of Columbia, Defendants—Scott Bessent, in his official capacity as Secretary of the Treasury, Department of the Treasury, and Bureau of the Fiscal Service (Bureau)—provide the following responses to Plaintiffs' interrogatories, as served on March 20, 2025, following modification by the Court's March 20, 2025 Memorandum Opinion and Order, ECF No. 52 (Discovery Order).

**General Objections**

1.　　The following general objections apply to, and are incorporated in, each individual response.

2.　　Defendants object to providing any discovery at all at this time, as Defendants have not yet filed a motion to dismiss and have not answered the complaint; there has been no conference of the parties, as required by Rule 26(f) and Local Civil Rule 16.3(b).

3. Defendants object to the definitions in Plaintiffs' requests to the extent that the definitions conflict with or purport to expand upon the Defendants' obligations under the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Columbia, or the Court's Discovery Order.

4. Defendants object to each and every interrogatory to the extent that it is deemed to require disclosure of matters subject to the attorney-client privilege, the attorney work product doctrine, other applicable privileges, or any statutory or regulatory restriction on disclosure.

5. Defendants object to the term "Access," as used throughout Plaintiffs' interrogatories, because the phrase "directly read, review, copy, download or otherwise interact with records that are in an agency system" in Plaintiffs' definition of that term is vague and ambiguous. Defendants further object that the terms "directly," "records," and "system" are undefined and ambiguous. Defendants will interpret "records" and "system" as those terms are used in the Privacy Act, 5 U.S.C. § 552a.

6. Defendants object to the definition of "Bureau Systems" as used in Plaintiffs' interrogatories as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it includes systems that do not contain the Plaintiffs' "records" as defined by the Privacy Act or Federal Tax Information as defined in the Internal Revenue Code. Defendants will interpret the term to refer to any electronic payment record, payment system, or payment database maintained by, or under the control of, the Bureau that contain the Plaintiffs' members' "records," as defined by the Privacy Act, or Federal Tax Information as defined by the Internal Revenue Code.

7. Defendants object to the definition of "Personal Information" as used in Plaintiffs' interrogatories as overbroad, unduly burdensome, and not proportional to the needs of the case to

2

the extent that it includes information that is not a "record" as used in the Privacy Act or Federal Tax Information as defined in the Internal Revenue Code that is associated with Plaintiffs' members. Defendants will interpret "Personal Information" to be Plaintiffs' members' records as used in the Privacy Act or Federal Tax Information as defined by the Internal Revenue Code.

8. Defendants object to the term "records," as used throughout Plaintiffs' interrogatories, as vague and ambiguous. Defendants will interpret the terms "record" and "records" as used in the Privacy Act, 5 U.S.C. § 552a.

9. Defendants object to the definition of "Treasury DOGE Team" as vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case as it includes individuals "whether or not an employee, charged with carrying out implementation of Executive Order 14158." Defendants will interpret the term to include the individuals identified in the declaration of Kari Mencl filed on March 5, 2025, in *State of New York v. U.S. Department of the Treasury*, No. 1:25-cv-1144-JAV (S.D.N.Y), at ECF 98-4, which identifies all Treasury DOGE Team members as of date of this response.

10. Defendants object to the definition of "USDS" as overbroad and ambiguous to the extent that it requires Treasury to identify whether individuals have an employment relationship with the United States DOGE Service. Defendants will interpret the term to consist of the United States DOGE Service, the United States DOGE Service Temporary Organization, and individuals who Treasury knows to have an employment relationship with the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization because they correspond with Defendants from an email address with the domain "@doge.eop.gov."

11. Defendants reserve the right to amend, supplement, or alter these objections at any time.

12. Nothing contained in the following specific objections and responses constitutes a waiver of any applicable objection or privilege as to the requested discovery.

## Reservation of Rights

The foregoing general objections and the following specific objections and responses are based on the Defendants' interpretation of the Plaintiffs' interrogatories and information reasonably available to Defendants as of today. Defendants reserve the right to supplement these objections or responses if Plaintiffs purport to interpret their requests differently than Defendants or if Defendants discover new information supporting additional objections or responses. Defendants also reserve the right to object to the admissibility of any information contained herein on the grounds of relevance, proportionality, accessibility, materiality, or any other appropriate ground.

## Objections and Responses to Specific Interrogatories

**Interrogatory No. 1:** Describe in detail steps taken, including any plans developed, to implement the following portions of Executive Order 14158:

a. Facilitating responsible data collection and synchronization.

b. Ensuring USDS has full and prompt access to all unclassified agency records, software systems, and IT systems.

**Objections:** Defendants object to Interrogatory No. 1 to the extent it seeks information regarding plans not approved as of the date of this response; to the extent it exists, such information is protected under legal privileges, including deliberative process and attorney-client privilege. Defendants further object to Interrogatory No. 1 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding steps taken or

4

plans developed by agencies other than Treasury, and, accordingly, Defendants limit their response to approved plans and steps taken by Treasury.

**Response:** Subject to and without waiving the foregoing objections, Defendants respond to this interrogatory as follows:

Defendants refer Plaintiffs to the following declarations and documents, which contain information responsive to this request:

- The Declaration of Joe Gioeli III, ECF No. 24-2.
- The Declaration of Vona S. Robinson, ECF No. 24-4.
- The Declarations of Joe Gioeli III, filed in *State of New York, et al. v. U.S. Dep't of the Treasury, et al.*, 1:25-cv-01144-JAV (S.D.N.Y.), ECF Nos. 34, 98-2.
- The Declaration of Nathaniel Reboja ("Reboja Decl."), filed in *State of New York, et al. v. U.S. Dep't of the Treasury, et al.*, 1:25-cv-01144-JAV (S.D.N.Y.), ECF No. 116-2.
- The Declarations of David Ambrose, one docketed in this case as ECF No. 48-2, and another filed in *State of New York, et al. v. U.S. Dep't of the Treasury, et al.*, 1:25-cv-01144-JAV (S.D.N.Y.), ECF No. 126.
- The administrative record, docketed as ECF Nos. 44-1 and 48-1.

Defendants further state that, on January 20, 2025, the President issued an Executive Order 14158 titled "Establishing and Implementing the President's 'Department of Government Efficiency.'" That Executive Order established the USDS within the Executive Office of the President and directed each agency to establish a DOGE team to modernize Federal technology and software to maximize governmental efficiency and productivity, to promoting inter-

5

operability between agency networks and systems, to ensure data integrity, and to facilitate responsible data collection and synchronization.

Treasury established such a team (Treasury DOGE Team), which presently consists of Thomas Krause, Todd Newnam, Ryan Wunderly, Linda Whitridge, Sam Corcos, and Gavin Kliger. Defendants seek to leverage the unique skill set of the Treasury DOGE Team to make the Treasury Department more effective, more efficient, and more responsive to the policy goals of this Administration using cutting-edge technologies.

For information on Treasury DOGE Team projects implementing Executive Order 14158 and other Executive Orders and Presidential priorities, see Defendants' response to Interrogatory No. 2.

Bureau employees support the Treasury DOGE Team in some described projects by, among other things, providing data maintained by the Bureau, except as prohibited under applicable court orders. For example, between January 28, 2025 and February 5, 2025, personnel with the Bureau's Disbursing and Debt Management unit (DDM) received various requests for payment data from Tom Krause or Marko Elez. Bureau personnel retrieved said data from the Payment Information Repository (PIR) System (or PIRS). (For more information about PIR, *see* https://fiscal.treasury.gov/pir/.)

**Interrogatory No. 2:** To the extent not already disclosed in this litigation, describe in detail plans or projects that will entail providing the Treasury DOGE Team or USDS access to Personal Information.

**Objections:** Defendants object to Interrogatory No. 2 to the extent it seeks information regarding plans or projects not approved as of the date of this response; to the extent it exists, such information is protected under legal privileges, including deliberative process and attorney-client

6

privilege. Defendants further object to Interrogatory No. 2 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding plans or projects, approved, or implemented by agencies other than Treasury or access to systems maintained or operated by Treasury that is approved by agencies—or employees of agencies—other than Treasury. Defendants further object to the term "access," as set forth in General Objection 5. Defendants further object to the term "Personal Information," as set forth in General Objection 7. Defendants further object to the terms "record" and "records," as set forth in General Objection 8. Defendants object to the definition of "Treasury DOGE Team" as set forth in General Objection 9. Defendants further object to the term "USDS," as set forth in General Objection 10.

**Response:** Subject to and without waiving the foregoing objections, Defendants answer this interrogatory as follows:

Defendants identify the following projects approved by Treasury prior to the date of this response:

- BFS Payment Process Engagement: As previously disclosed in this litigation, the Bureau commenced a payment-process engagement in which the Bureau would support the Treasury DOGE Team, then consisting of Tom Krause and Marko Elez, to understand BFS payment processes and identify opportunities to advance payment integrity and fraud-reduction goals.

- Aiding Agencies in Implementing Executive Order on Reevaluating and Realigning United States Foreign Aid (Foreign Aid EO): As previously disclosed in this litigation, Treasury implemented a system to assist payor agencies in identifying payments that may be improper under the Foreign Aid EO.

- Vendor Contract Reviews: The Treasury DOGE Team commenced a review of the Internal Revenue Service's (IRS) $3.7 billion modernization budget and $3.3 billion IT operations and maintenance budget for Fiscal Year 2025, consisting largely of outside vendor contracts, with the goal of reducing waste, streamlining Treasury operations, and paving the way for the much-needed modernization of Federal technology and software that goes to the core of the Treasury DOGE mission. For this engagement, the Treasury DOGE Team has accessed a software application at the IRS called Procurement for Public Sector (PPS) and the data contained in this system to perform this work, except as prohibited under applicable court orders. PPS is not a payment system; it is a system that houses current and prospective contracts between the IRS and third-party contractors. The Treasury DOGE Team has also reviewed contracts for other parts of Treasury (including BFS) for potential cancellation or descoping to increase efficiency and save taxpayers significant funds.
- Review of Human Resources, Financial, and Other Records and Systems Related to Treasury Management and Operations: Members of the Treasury DOGE Team were also provided access to systems supporting these functions for the purpose of reviewing and evaluating data in those systems in accordance with Presidential priorities, except as prohibited under applicable court orders.

Under the terms of a preliminary injunction issued in *American Federation of Teachers, et. al. v. Bessent et. al.*, 25-cv-430-DLB (D. Md.), on March 24, 2025, Defendants are currently enjoined from "disclosing the personally identifiable information of the plaintiffs and the members of the plaintiff organizations to DOGE affiliates, defined as individuals whose principal role is to implement the DOGE agenda as described in Executive Order 14158 and who were granted access

8

to agency systems of records for the principal purpose of implementing that agenda (DOGE affiliates includes Thomas Krause and Ryan Wunderly)." Another preliminary injunction, issued in *State of New York, et al. v. U.S. Dep't of the Treasury, et al.*, No. 25-cv-1144 (JAV) (S.D.N.Y), on February 21, 2025, restrains the Treasury Department and the Secretary of the Treasury "from granting access to any Treasury Department payment record, payment systems, or any other data systems maintained by the Treasury Department containing personally identifiable information and/or confidential financial information of payees to any employee, officer, or contractor employed or affiliated with the United States [Department of Government Efficiency ("DOGE")] Service, DOGE, or the DOGE Team established at the Treasury Department."[1]

Accordingly, Treasury DOGE Team members currently do not have access to Bureau payment systems, Bureau payment data that contains personally identifiable information (PII) or confidential banking information of the plaintiffs in the District of Maryland or Southern District of New York litigation; human resources, financial, and other records and systems related to Treasury Management and Operations and containing PII; or PPS, with limited exceptions. First, Treasury DOGE Team members have access to systems that contain their own PII, such as certain human resources and travel systems. Second, Treasury DOGE Team members have access to data from these systems that does not contain PII.

**Interrogatory No. 3:** Explain the basis for the statement in paragraph 15 of Thomas Krause's declaration, ECF 24-1, that the Treasury DOGE Team required "the ability to review

---

[1] On March 7, 2025, following Defendants' request for clarification of the scope of the preliminary injunction, the court in *State of New York* modified the injunction "to exclude the [IRS PPS] software application from the restrictions on access that were placed on employees, officers, or contractors employed or affiliated with the United States DOGE Service, DOGE, or the DOGE Team established at the Treasury Department."

9

sensitive payment data" to "understand the full end-to-end payment process," including whether "sensitive payment data" includes Personal Information.

**Objections:** Defendants object to the term "Personal Information," as set forth in General Objection 7. Defendants further object to the terms "record" and "records," as set forth in General Objection 8. Defendants further object to the definition of "Treasury DOGE Team" as set forth in General Objection 9.

**Response:** Subject to and without waiving the foregoing objections, Defendants answer this interrogatory as follows:

As stated in prior filings and described herein, in late January 2025, the Bureau entered into a Payment Process Engagement for the Treasury DOGE Team to gain insights on money-in/money-out through the Fiscal Service payment systems while identifying efficiencies in the overall payment flow. This process payment engagement is intended to improve financial reporting accountability, accuracy, and transparency, reduce the risk of improper payments, and ensure all payments are supported by an appropriation, receipt, or other fund account. Read-only access to Bureau payment systems and the payment databases is necessary to complete the work contemplated by the engagement. The end-to-end system review requires a thorough review of payment transactions, payment information, and payee information databases for uses including but not limited to identity verification, payment routing, and fraud prevention. This data includes various PII (SSN, EIN, TIN, address, award IDs, banking information, etc., as applicable), provided by federal agencies.

To improve payment technology, one or more members of the Treasury DOGE Team will need to access Bureau payments systems and query the payment data sources, which include PII, to understand the extent of system failures and improper payments. Improper payments can occur

when there are information mismatches between payee identity and banking information (both of which are PII). For example, during a fraudulent account takeover event, a malicious actor may gain control of an online account and attempt to redirect funds to their bank account. Currently, Treasury systems do not automatically review changes in banking information and Treasury does not know the likelihood of this scenario occurring. Modern solutions implement automated identity verification triggered on changes in account information. To recommend new technology solutions for issues such as this and confirm successful implementation of new safeguards, the Treasury DOGE Team member(s) will need to query systems and review payments records that contain PII.

**Interrogatory No. 4:** Describe in detail the access to Bureau Systems provided to any member of the Treasury DOGE Team during the Kansas City visit described at ECF 44-1, at 62, including whether such access was read/write and whether any member of the Treasury DOGE Team had the ability to view, copy, download, save, transfer, or otherwise share Personal Information.

**Objections:** Defendants object to the term "access," as set forth in General Objection 5. Defendants further object to the term "Bureau Systems," as set forth in General Objection 6. Defendants further object to the term "Personal Information," as set forth in General Objection 7. Defendants further object to the definition of "Treasury DOGE Team," as set forth in General Objection 9.

**Response:** Subject to and without waiving the foregoing objections, Defendants answer this interrogatory as follows:

Defendants refer Plaintiffs to the following documents, which contain information responsive to this request:

11

- The Declaration of Joe Gioeli III, ECF No. 24-2.

- The Declaration of Vona S. Robinson, ECF No. 24-4.

- The Declarations of Joe Gioeli III, filed in *State of New York, et al. v. U.S. Dep't of the Treasury, et al.*, 1:25-cv-01144-JAV (S.D.N.Y.), ECF Nos. 34, 98-2.

- The administrative record, docketed at ECF Nos. 44-1 (in particular pages 63–75) and 48-1.

Defendants further state that the Kansas City visit occurred from January 28, 2025 through January 30, 2025. During the visit, on January 28, the Bureau issued Mr. Elez a Fiscal Service laptop and provided him with copies of source code for PAM, SPS, and ASAP under the circumstances described in Mr. Gioeli's declaration, ECF No. 24-2 ¶ 16. Also, as reflected on the itinerary produced at 25-cv-00313_DDC_UST_0056, on January 28, 2025, the Bureau provided "Deep Dive and Demo" meetings focused on SPS, PAM, and ASAP; on January 29, 2025, PAM and ASAP product teams met for technical discussions. These meetings did not include access to PII: ASAP and SPS meetings were conducted using a test system without real data. PAM test files without PII were displayed to show the file layout that agencies are required to populate and submit. The PAM production system was shown, but that user interface does not include PII.

**Interrogatory No. 5:** With respect to access to Bureau Systems granted to Marko Elez, identify (a) the individuals who requested that Marko Elez receive read/write or read only access, as reflected in the Incident Detail reports reproduced at ECF 48-1, at 13, 16, & 18; (b) the Bureau Systems for which write access was granted, and (c) the dates on which write access to any such system was removed.

**Objections:** Defendants object to the term "access," as set forth in General Objection 5. Defendants further object to the term "Bureau Systems," as set forth in General Objection 6.

12

Defendants further object to this interrogatory to the extent it seeks the names of the individuals that are redacted in Incident Detail Statements on pages 13, 16, and 18 of ECF No. 48-1. None of the BFS employees identified on pages 13, 16, and 18 "requested" that Mr. Elez receive access to any payment system. Rather, these BFS IT employees sought, through execution of the tickets on pages 13, 16, and 18, to facilitate, provision, or provide the access that Treasury approved. The public disclosure of the names of these individuals may lead to undue public attention, harassment, or threats to their safety.

**Response:** Subject to and without waiving the foregoing objections, Defendants answer this interrogatory as follows:

a. Thomas Krause and Marko Elez requested the access described in the "original access request" column of the spreadsheet produced in the administrative record at 25-cv-00313_DDC_UST_0062. At Secretary Bessent's direction, Chief of Staff Daniel Katz coordinated with other senior Treasury officials to ensure appropriate mitigation controls were implemented. Those mitigation controls and coordination are reflected in 25-cv-00313_DDC_UST_0061-62. As reflected in 25-cv-00313_DDC_UST_0061, Matthew Garber (then-Acting Fiscal Assistant Secretary) provided the access decision to the Bureau for implementation.

b. The SPS, inadvertently and for a brief period. *See* Declaration of Joe Gioeli III, ECF No. 24-2 ¶ 20.

c. February 6, 2025. *See* Declaration of Joe Gioeli III, ECF No. 24-2 ¶ 20.

**Interrogatory No. 6:** With respect to the email sent by Marko Elez referred to in paragraph 12 of the declaration of David Ambrose, ECF 48-2:

a. identify each addressee, including any cc's or bcc's.

13

    b.      state the date on which the email was sent.

    c.      identify each individual, if any, who authorized or directed Mr. Elez to send the email.

    d.      identify the Bureau Systems from which the Personal Information contained in the email or the attached spreadsheet was obtained.

    e.      describe the nature of the information that was transmitted, including whether the information relates to the USAID files that Mr. Elez copied, as noted in paragraph 18 of Joseph Gioeli's declaration, ECF 24-2.

**Objections:** Defendants object to this interrogatory because it is vague, in that it seeks an assessment of whether the spreadsheet in question "relates" to two other files Mr. Elez copied.

**Response:** Subject to and without waving the foregoing objections, Defendants answer this interrogatory as follows:

    a.      luke.farritor@gsa.gov and jeremy.lewin@gsa.gov

    b.      January 30, 2025

    c.      Treasury has not identified a specific individual who authorized or directed Mr. Elez to send the email. Treasury conducted a reasonable search and identified the following information: On January 28, 2025, in response to a request from Thomas Krause, Bureau personnel emailed Mr. Krause an excel file with multiple tabs titled "USAID Payment request payment dates 1.21 through 1.24 updated." Bureau personal generated the file with data from PIRS. On January 30, 2025, Mr. Krause sent an email to Mr. Elez (at his marko.elez@fiscal.treasury.gov email address) with no subject and no text that attaches an excel file that is named "USAID Payment request payment dates 1.21((Unsaved-311586651639630160))." The file Mr. Krause received and the one he sent to Mr. Elez are in the same format and appear to contain the same USAID payment

data, albeit in a different order. On January 30, 2025, Mr. Elez sent an email to luke.farritor@gsa.gov and jeremy.lewin@gsa.gov with the subject "USAID Payments" and attached an excel file named "usaid.xlsb." The excel file Mr. Krause sent to Mr. Elez and the excel file that Mr. Elez sent to GSA appear to be the same.

    d.    The PIR system

    e.    See documents produced in response to Document Request No. 3. Regarding the "USAID files that Mr. Elez copied, as noted in paragraph 18 of Joseph Gioeli's declaration, ECF 24-2," following Mr. Gioeli's declaration, further review of Mr. Elez's computer indicates that Elez copied only one USAID file. The files are different; however, they reference two of the same payees/vendors.

**Interrogatory No. 7:** Excluding the Marko Elez email referred to in Interrogatory # 9, identify all instances in which Personal Information has been disclosed to or shared with USDS during the time period covered by these requests. For each instance:

    a.    identify the routine use under the Privacy Act that you contend authorized the disclosure or sharing.

    b.    if any disclosed or shared information includes Federal Tax Information, identify the provision of the Internal Revenue Code that you contend authorized the disclosure or sharing.

**Objections:** Defendants object to this interrogatory as overbroad and unduly burdensome to the extent it: (i) seeks information on disclosure to or sharing with USDS by Treasury or Bureau employees other than Marko Elez, or (ii) calls for Treasury to identify information that may have been shared orally by Mr. Elez.

15

**Response:** Subject to and without waiving the foregoing objections, Defendants answer this interrogatory as follows:

The Bureau conducted an analysis of emails Mr. Elez sent from his Bureau email address (marko.elez@fiscal.treasury.gov) and did not identify any emails sent to the domain "@doge.eop.gov," which Treasury understands to be the email domain for the United States DOGE Service. Treasury has not yet completed its forensic analysis of the laptop issued to Mr. Elez by the Treasury Departmental Offices; however, Treasury completed an initial review of Mr. Elez's Treasury emails and has not identified any other instance in which Mr. Elez sent emails to the domain "@doge.eop.gov" from his Treasury email address (marko.elez@treasury.gov).

\* \* \*

As to the responses to the interrogatories, see Attachment A.

As to objections:

Dated: March 31, 2025                        Respectfully submitted,

### VERIFICATION OF INTERROGATORY ANSWERS

I, Daniel Katz, am the Chief of Staff of the Department of the Treasury located in Washington, D.C. I believe, based on reasonable inquiry, that the foregoing answers to interrogatories on behalf of Treasury, are true and accurate to the best of my knowledge.

I verify under penalty of perjury that the foregoing is true and correct. Executed on March 31, 2025.

*Daniel Katz*
_____

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director
Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

*Attorneys for Defendants*