UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLIANCE FOR RETIRED AMERICANS, *et al.*,

        Plaintiffs,

    v.

SCOTT BESSENT, in his official capacity as Secretary of the Treasury, *et al.*,

        Defendants.

Civil Action No. 25-0313 (CKK)

**MEMORANDUM OPINION**
(March 5, 2026)

In this action, a nonprofit organization and two labor unions challenge the Department of the Treasury's decision to allow individuals associated with the U.S. DOGE Service to access certain sensitive records held by the Bureau of the Fiscal Service. This Court previously denied the Plaintiffs' motion for a preliminary injunction, concluding that although the Plaintiffs had plausibly alleged that they have standing, they had not made a sufficient showing of irreparable harm to be entitled to preliminary relief. The Defendants have now moved to dismiss this action or, in the alternative, for summary judgment. The Plaintiffs have filed a cross-motion for summary judgment. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Mot."), Dkt. No. 61, and the accompanying Memorandum ("Defs.' Mem."), Dkt No. 61-1;
- the Plaintiffs' Cross-Motion for Summary Judgment ("Pls.' Mot."), Dkt. No. 62, and the accompanying Memorandum in Support of the Plaintiffs' Cross-Motion and in Opposition to the Defendants' Motion ("Pls.' Mem."), Dkt. No. 62-2;
- the Defendants' Combined Reply in Support of their Motion and Opposition to the Plaintiffs' Cross-Motion ("Defs.' Reply and Opp'n"), Dkt. No. 65;
- the Plaintiffs' Reply in Support of their Cross-Motion ("Pls.' Reply"), Dkt. No. 67; and
- the Joint Appendix ("J.A."), Dkt. No. 68-2.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

1

entire present record, the Court shall **GRANT** the Defendants' motion for summary judgment and **DENY** the Plaintiffs' cross-motion. Because the Plaintiffs have not established that the decisions they challenge are final agency action and they have not satisfied the demanding standards for non-statutory *ultra vires* review of an agency's compliance with a statute, the Defendants are entitled to judgment as a matter of law.

## I. BACKGROUND

On January 20, 2025, President Donald J. Trump signed an Executive Order purporting to establish a "Department of Government Efficiency," a new initiative with the stated goal of "modernizing Federal technology and software to maximize governmental efficiency and productivity." Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) § 1. This Executive Order renamed the existing United States Digital Service as the "United States DOGE Service" ("USDS" or "DOGE") and provided that its leader, the "USDS Administrator," would report directly to the White House Chief of Staff. *Id.* § 3(a)–(b). It also directed the heads of federal agencies to, among other things, "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." *Id.* § 4(b).

In this case, a nonprofit organization and two labor unions allege that, in response to this Executive Order, the Secretary of the Treasury, the Department of the Treasury, and the Bureau of the Fiscal Service ("BFS") "implemented a system under which Elon Musk or other individuals associated with [the U.S. DOGE Service] could access" certain records held by BFS for purposes other than those authorized by law, and that in doing so, they "failed to engage in reasoned decisionmaking." Compl., Dkt. No. 1, ¶ 56. The Plaintiffs also allege that the Defendants' actions were contrary to law and in excess of statutory authority. *Id.* ¶¶ 52, 59.

The Plaintiffs initially sought a temporary restraining order enjoining the Defendants "from disclosing information about individuals to individuals affiliated with the" USDS and further enjoining the Defendants "to retrieve and safeguard any information that has already been obtained by [USDS] or individuals associated with it." *See* Pl.'s Mot. for Temporary Restraining Order, Dkt. No. 8, at 1. The parties later agreed to an interim consent order to preserve the status quo, and the Plaintiffs agreed to convert their motion for a temporary restraining order into a motion for a preliminary injunction. *See* Order, Dkt. No. 13. At the parties' request, the Court later modified that consent order to substitute the name of a new Treasury employee and member of the Treasury "DOGE Team" for the name of an employee and DOGE Team member who had since left the agency. *See* Order, Dkt. No. 32.

The Court held a hearing on Plaintiffs' motion for a preliminary injunction on February 24, 2025. *See* Tr. of Preliminary Injunction Hr'g, Dkt. No. 36. After that hearing, the Court ordered the Defendants to "file the administrative record underlying the decisions challenged in this case." Min. Order (Feb. 25, 2025). The Court later denied the Plaintiffs' motion for a preliminary injunction, concluding that they had not made the showing of irreparable harm necessary to support such an injunction under binding precedent in this Circuit. *See All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 111 (D.D.C. 2025) (CKK).

The Defendants then filed the administrative record in compliance with the Court's Order, reserving an objection that none of the actions challenged in this case is a "final agency action" reviewable under the Administrative Procedure Act ("APA"). *See* Administrative Record ("A.R."), Dkt. No. 44-1. The Plaintiffs filed objections to the Defendants' designation of the administrative record, which this Court resolved. *See* Pls.' Objs., Dkt. No. 45; Mem. Op. & Order, Dkt. No. 47. In response to the Plaintiffs' objections and the Court's order, the Defendants filed

3

supplemental material. *See* Katz Decl., Dkt. No. 48-1. The Defendants also filed a declaration that they had submitted in a related case in the Southern District of New York. *See* Ambrose Decl., Dkt. No. 48-2. Finally, the Plaintiffs filed a motion for expedited discovery, which this Court granted in part and denied in part. *See* Pls.' Mot., Dkt No. 49; Mem. Op. & Order, Dkt. No. 52.

The record developed through these proceedings shows that early last year, in response to Executive Order No. 14,158, the Defendants provided individual members of the "Treasury DOGE Team" with an unprecedented level of access to sensitive BFS payment systems. *See, e.g.*, Gioeli Decl., Dkt. No. 24-2, ¶ 13; J.A., Dkt. No. 68-2, at 27–29. The Defendants' stated goal in allowing this access was to "[g]ain insight" into payment flows through BFS systems, which would allow the DOGE Team to prepare a report for the Secretary recommending improvements to the systems "in support of payment integrity and fraud prevention." J.A. at 27. The record shows that each Treasury DOGE Team member that received this access was an employee of the Treasury Department at the time of receiving access. *See* J.A. at 1–4, 7–21; Krause Decl., Dkt. No. 24-1, ¶¶ 1–2; Wenzler Decl., Dkt. No. 24-3, ¶¶ 3–4. The record shows that one former member of the Treasury DOGE Team violated Treasury Department protocols by emailing a copy of certain records to two individuals at the U.S. General Services Administration ("GSA") without authorization, but there is no indication in the present record that the Defendants approved this disclosure or that it was part of a broader pattern of unauthorized disclosures outside the Treasury Department. *See* Ambrose Decl. ¶ 12; Defs.' Resps. to Interrog., Dkt. No. 61-2, at 13–14 (No. 6).

Since February 21, 2025, the Treasury DOGE Team's access to BFS payment systems has been limited by a preliminary injunction entered by Judge Jeannette A. Vargas in the Southern District of New York. *See New York v. Trump*, No. 25-cv-1144, Dkt. No. 76 (S.D.N.Y. Feb. 21, 2025); *see also id.* Dkt. Nos. 139, 156 (modifying injunction). An appeal from that injunction is

pending before the U.S. Court of Appeals for the Second Circuit. *See id.* Dkt. No. 169 (notice of appeal); *New York v. Trump*, No. 25-1860 (2d Cir. filed July 29, 2025).

Discovery in this case is now complete, and the parties have filed dispositive motions. The Defendants have moved to dismiss this action or, in the alternative, for summary judgment. *See* Defs.' Mot., Dkt. No. 61; Defs.' Mem., Dkt. No. 61-1. The Plaintiffs oppose the Defendants' motion and have filed a cross-motion for summary judgment. *See* Pl.'s Mot., Dkt. No. 62; Pls.' Mem., Dkt. No. 62. The Defendants oppose the Plaintiffs' cross-motion. *See* Defs.' Reply & Opp'n, Dkt. No. 65. The parties' motions are now ripe for decision.

## II. LEGAL STANDARD

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) requires the Court to assess whether it has subject-matter jurisdiction over the claims asserted. Fed. R. Civ. P. 12(b)(1). In response to such a motion, the party invoking the Court's jurisdiction "has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). In assessing its own jurisdiction in this posture, a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

A motion to dismiss under Rule 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As with a motion under Rule 12(b)(1), a reviewing court must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor when resolving a motion under Rule 12(b)(6). *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024).

A court must grant a motion for summary judgment under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When parties move for summary judgment in an APA case, "[t]he entire case on review is a question of law, and only a question of law." *Pol'y & Rsch., LLC v. United States Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (KBJ) (alteration in original) (quoting *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

## III. ANALYSIS

### A. The Plaintiffs have plausibly alleged a basis for standing.

The Court begins, as it must, with its own jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–96 (1998). The Defendants' sole challenge to the Court's jurisdiction is that the Plaintiffs lack Article III standing. Defs.' Mem. at 11–18. For the same reasons the Court explained at greater length at the preliminary injunction stage, the Court concludes that the Plaintiffs have plausibly alleged that they have standing, which is sufficient to withstand a motion to dismiss under Rule 12(b)(1). *See All. for Retired Ams.*, 770 F. Supp. 3d at 99–104.

To have standing—that is, the requisite "personal stake" in the outcome of a case—a party must show an "injury in fact that is concrete, particularized, and actual or imminent," that this injury "was likely caused by the defendant," and that it "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). When assessing whether a harm is sufficiently "concrete" to support standing, courts "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). The party asserting standing must demonstrate it "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In a case like this one in which the plaintiffs are voluntary membership organizations, each organizational plaintiff may proceed based on "associational standing" by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

To satisfy Article III's case-or-controversy requirement at the motion-to-dismiss stage, Plaintiffs need only "state a plausible claim" that they have standing. *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). When evaluating whether Plaintiffs have satisfied this requirement, the Court "must accept as true all material allegations of the complaint." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The Court may also "consider materials outside of the complaint" when assessing standing. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). When evaluating standing, the Court must "assume [Plaintiffs] will prevail on the merits" of their legal claims. *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

Applying these principles, the allegations in the Plaintiffs' Complaint are sufficient to withstand a motion to dismiss under Rule 12(b)(1). In their Complaint, the Plaintiffs alleged that the Defendants had "implemented a continuous and ongoing system for disclosing records" of their individual members, including to "individuals who are not officers or employees of [BFS] who have a need for the records in the performance of their duties" and for purposes other than those allowed under the Privacy Act. *See* Compl. ¶¶ 48–52.

As the Court concluded at the preliminary injunction stage, these allegations are sufficient to state a plausible claim for associational standing because the alleged privacy harm to the Plaintiffs' members bears a "close relationship" to the harm traditionally redressable through a

7

common-law tort suit alleging intrusion upon seclusion. *See All. for Retired Ams.*, 770 F. Supp. 3d at 102; *TransUnion*, 594 U.S. at 425. A privacy harm can support standing by analogy to intrusion upon seclusion if the challenged invasion of privacy would be "offensive to a reasonable person." *Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1228–29 (D.C. Cir. 2025). Here, the Plaintiffs' allegations of unlawful sharing of their members' sensitive financial information more than suffice to state a claim of such an injury.

The Defendants argue that no reasonable person would be offended by the conduct at issue here, but their argument underplays the sensitivity of the information at issue and the strength of individuals' legitimate interest in ensuring that this information is protected. *See* Defs.' Mem. at 12–18. As the Court previously concluded, individuals have a protectable privacy interest in their sensitive financial information, regardless of whether they hold that information in their own homes or leave it for safekeeping with banks, federal agencies, or other trusted third parties. *See All. for Retired Ams.*, 770 F. Supp. 3d at 103–04. Here, the Plaintiffs alleged that their members have a reasonable interest in ensuring that federal agencies share their sensitive financial information only with authorized individuals for discrete, lawful purposes. *See* Compl. ¶ 44. They also alleged that the Defendants harmed that interest by sharing their members' information with individuals who are not legally authorized to receive it. *See id.* ¶¶ 48–52. That unlawful sharing of private information, if proven, would be "offensive to a reasonable person." *See Pileggi*, 146 F.4th at 1228–29. It therefore bears a "close relationship" to the harm redressable through a suit for intrusion upon seclusion. *See id.* Accordingly, assuming—as the Court must in the present posture—that the Plaintiffs' factual allegations are true and that the Plaintiffs are correct about the substantive scope of the relevant privacy statutes, their allegations are sufficient to state a plausible claim that they have standing. *See LaRoque*, 650 F.3d at 785; *Warth*, 422 U.S. at 501.

Because the Plaintiffs have plausibly alleged a basis for standing, the Court shall **DENY** the Defendants' motion to dismiss for lack of jurisdiction.

> **B.     The Plaintiffs have not established that the decision they challenge is judicially reviewable, final agency action.**

Although the Plaintiffs have plausibly alleged that they have standing, their claims ultimately falter because of a different threshold issue: lack of final agency action.

The Plaintiffs' principal claims in this case arise under the Administrative Procedure Act ("APA"), which provides for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704; *see* Compl. ¶¶ 45–57.  In the absence of final agency action, a plaintiff lacks a cause of action under the APA and a court "cannot reach the merits of the dispute."  *See Trudeau v. FTC*, 456 F.3d 178, 184–85 (D.C. Cir. 2006); *DRG Funding Corp. v. Sec'y of Hous. & Urb. Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996).

Under the APA, an agency action is "final" and judicially reviewable only if it both (1) "mark[s] the consummation of the agency's decisionmaking process," meaning that it is not "of a merely tentative or interlocutory nature," and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *MediNatura, Inc. v. FDA*, 998 F.3d 931, 938 (D.C. Cir. 2021) (quoting *Bennett v. Spear*, 520 U.S. 154, 178, (1997)).

In this case, the Plaintiffs originally alleged that the Treasury Department had implemented a new policy of sharing sensitive data outside the Department.  *See* Compl. ¶¶ 48–52.  Such a policy, if proven, would likely be final agency action.  Implementing such a policy by sharing data outside the Department would clearly represent the "consummation" of the Department's own decision-making process because once an agency has shared data externally, it cannot unilaterally undo that sharing.   *See Bennett*, 520 U.S. at 178.    And because the Privacy Act authorizes

9

agencies to share information only under certain circumstances, the sharing would "determine the rights of those whose information is being disclosed," as well as "the obligations of the agency." *See AFL-CIO v. Dep't of Lab.*, 778 F. Supp. 3d 56, 78 (D.D.C. 2025) (JDB); *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 931 (2018). Accordingly, the kind of inter-agency sharing alleged in the Plaintiffs' Complaint would likely be judicially reviewable, final agency action.

However, the record developed through discovery and the production of the administrative record in this case reveals that, in fact, the information-sharing practices that the Plaintiffs challenge were part of a new initiative involving *intra*-agency disclosures to employees within the Treasury Department. Although the Plaintiffs plausibly alleged in their Complaint that the Defendants had adopted a policy of sharing information with U.S. DOGE Service personnel who were *not* employees of the Treasury Department, the record now shows that each of the individuals who the agency authorized to received access under the challenged policy were hired as Treasury Department employees. *See* J.A. at 1–4, 7–21; Krause Decl. ¶ 2; Wenzler Decl. ¶¶ 3–4.

The single instance of unauthorized disclosure outside the Treasury Department that is reflected in the record does not warrant the conclusion that the Defendants had adopted a policy of sharing data outside the Department. The record shows that one former member of the Treasury DOGE Team sent an email containing Treasury data to two employees of another federal agency without authorization. *See* Ambrose Decl. ¶ 12; Defs.' Resps. to Interrog. No. 6. However, there is no indication that any of the Defendants authorized this disclosure or that it was part of a broader pattern of similar disclosures. Accordingly, this incident does not affect the characterization of the Department's new initiative as one of *intra*-agency data sharing, not external disclosure.

This fact that the data-sharing initiative at issue was internal to the Treasury Department alters the finality analysis under the APA. The Privacy Act draws important distinctions between

intra-agency and inter-agency sharing of records about individuals, allowing the former any time an agency's own officers or employees "have a need for the record in the performance of their duties," but the latter only in much more limited circumstances.  *Compare* 5 U.S.C. § 552a(b)(1), *with, e.g.*, *id.* § 552a(b)(3) (allowing inter-agency sharing for a "routine use" that has been published in the Federal Register), (b)(7) (allowing inter-agency sharing for "a civil or criminal law enforcement activity," but only upon a "written request" that meets specific requirements).  As the Federal Defendants note, internal sharing of data with employees within an agency is a routine decision that should have few, if any, direct practical or legal consequences for individuals.  *See* Defs.' Mem. at 20–21.  Meanwhile, treating internal data-sharing within an agency as "final" action could have far-reaching consequences, potentially inviting judicial review of a vast array of operational choices that agencies must make in carrying out their duties.  *Cf. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) (concluding that an APA plaintiff "cannot demand a general judicial review of [an agency's] day-to-day operations.").  In short, there are strong reasons to treat an agency's decisions about sharing data with its own employees as a "interlocutory" decision, rather than a final, judicially reviewable action.  *See Bennett*, 520 U.S. at 178.

       The Plaintiffs urge the Court to find final agency action here based on the D.C. Circuit's decision in *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (2018), but there are important distinctions between the facts of this case and those of *Venetian Casino*.

       In *Venetian Casino*, the action under review was a written policy of disclosing sensitive information to private third parties without prior notice.  *See* 530 F.3d at 931.  The D.C. Circuit concluded that the agency's disclosures under this policy were "consequential" to the plaintiff.  *Id.*  On that record, the court held that the disclosure was reviewable, final agency action.  *Id.*

In this case, by contrast, the record reveals that the data-sharing initiative at issue has not involved systematic disclosures to third parties outside of government; instead, the authorized data-sharing at issue here has been limited to employees of the Treasury Department. *See* J.A. at 1–4, 7–21; Krause Decl. ¶ 2; Wenzler Decl. ¶¶ 3–4. Unlike in *Venetian Casino*, there is no basis in the present record for concluding that the disclosures the agency has authorized will have immediate, practical consequences for the Plaintiffs. Accordingly, critical factors supporting the D.C. Circuit's finality determination in *Venetian Casino* are absent here, and the court's decision in that case does not control this one.

For all these reasons, on the present record, this Court is of the opinion that the Plaintiffs have not established that the actions they challenge in their APA claims are judicially reviewable "final agency action." 5 U.S.C. § 704. Accordingly, the Plaintiffs lack a statutory cause of action to proceed with these claims. *See Trudeau*, 456 F.3d at 185.

### C. Non-statutory *ultra vires* review is not available.

Having determined that the Plaintiffs lack a cause of action under the APA, the Court turns to their alternative claim of right to relief: an allegation that the Defendants have acted in "excess of statutory authority." *See* Compl. ¶¶ 58–59. Although the Plaintiffs originally framed this claim in their Complaint as an APA claim, they argue in their more recent briefing that the Court should construe it as a non-statutory, equitable challenge to *ultra vires* executive action. *Compare id.*, *with* Pls.' Mem. at 32–33, *and* Pls.' Reply at 14 n.1. Binding precedent forecloses such a challenge under the circumstances at issue here.

Equitable review of an agency's compliance with statutory requirements in the absence of a statutory cause of action—often called *ultra vires* review—is available only under specific, narrow circumstances. *See Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721–22 (D.C. Cir. 2022). To prevail on an *ultra vires* claim, "the plaintiff must establish three things: '(i) the

12

statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" *Id.* (quoting *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019)).  The requirement of showing a legal error is "especially demanding," requiring an error that is "'so extreme that one may view it as jurisdictional or nearly so.'" *Id.* (quoting *Griffith v. FLRA*, 842 F.2d 487, 492 (D.C. Cir. 1988)).  As these demanding requirements suggest, an equitable *ultra vires* claim challenging an agency's compliance with a statute "rarely succeeds."  *NRC v. Texas*, 605 U.S. 665, 681 (2025).

On the present record, the Plaintiffs have not cleared these high bars.  As the Defendants correctly note, both the Privacy Act and the Internal Revenue Code provide potential remedies if the Defendants mishandle the Plaintiffs' members' sensitive information.  *See* Defs.' Reply at 19–20.  For the reasons the Court explained in the preceding section, APA remedies may also be available if the Defendants share the Plaintiffs' members data with others outside the Treasury Department.  *See supra* Section III.B.  These potential remedies offer viable "alternative procedure[s]" for review, foreclosing an equitable challenge.  *See Changji Esquel Textile Co.*, 40 F.4th at 721–22.  Meanwhile, on the present record, the challenged actions do not appear to be such "extreme" violations of the Privacy Act or the Internal Revenue Code that extraordinary equitable relief is warranted.  *See id.*

Accordingly, on the present record, equitable *ultra vires* review is not available as an alternative to a statutory APA cause of action in this case.

\*   \*   \*

In sum, although the Plaintiffs properly established their standing to challenge the Defendants' unprecedented data-sharing initiative at the outset of this case, the record developed

through discovery and the production of the administrative record shows that the Defendants' actions are not final agency action. The Plaintiffs therefore lack a statutory cause of action. Because the Plaintiffs cannot satisfy the demanding requirements of equitable *ultra vires* review, either, the Defendants are entitled to judgment as a matter of law. Therefore, although the Court shall deny the Defendants' motion to dismiss for lack of jurisdiction, it shall grant summary judgment in the Defendants' favor. Because the Court will grant the Defendants' motion for summary judgment, the remainder of their motion to dismiss is moot.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **DENY IN PART** the Defendants' [61] Motion to Dismiss, **GRANT** the Defendants' [61] Motion in the Alternative for Summary Judgment, and **DENY** the Plaintiffs' [62] Cross-Motion for Summary Judgment. The Court shall **DENY AS MOOT** the remainder of the Defendants' [61] Motion to Dismiss.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 5, 2026

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge